# EXHIBIT

# 1

08/16/2005  01:26:59 PM    Claims, Centralized    6144645374-10    Page  7
08/16/2005   12:38    MULLIN INS AGENCY → ST AUTO CL OHIO    NO.766   P06

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
STATE OF GEORGIA

TOTAL SYSTEM SERVICES, INC.,

    Plaintiff,

v.

DICKSON/WELLS ARCHITECTS, INC.;
DICKSON/WELLS PARTNERS, INC.;
RIKE OGDEN FIGUEROA DICKSON
WELLS, PLLC; RIKE OGDEN FIGUEROA
ARCHITECTS, INC.; WELLS, JANOUSEK
ARCHITECTS, PLLC; DAN ARROWOOD;
PEACH ENGINEERING, LLC; ROSE
ENGINEERING ASSOCIATES, INC.;
ALTON STILLWELL d/b/a STILLWELL
MASONRY CO., INC.; J.W. COX d/b/a
J W COX MASONRY INCORPORATED;
PHENIX MECHANICAL
CONTRACTORS, INC.; LOTT SHEET
METAL CONTRACTORS, INC.;
PHENIX COMMERCIAL GLASS AND
MIRROR, INC; YKK AP AMERICA, INC.;
H.J. LAYFIELD, INC.; GRANT
ENVIRONMENTAL CONTRACTORS,
INC.,

    Defendants.

CIVIL ACTION

FILE NO. *SU05CV-2610-7*



GEORGIA, MUSCOGEE COUNTY
CLERK'S OFFICE, SUPERIOR COURT
FILED IN OFFICE

AUG 10 2005

At _____
CLERK, SUPERIOR COURT

## COMPLAINT

COMES NOW Plaintiff Total System Services, Inc. ("TSYS" or "Plaintiff"), expressly

reserving its contractual or other right to mediate and/or arbitrate any dispute described herein or

relating to any dispute described herein, with any party named herein or not named herein, and

files and serves this Complaint against the above named Defendants and alleges as follows:

## PARTIES

1.    Plaintiff TSYS is a Corporation organized under the laws of the State of Georgia.

2.     Defendant Dickson/Wells Architects, Inc. ("DWA") is a Texas Corporation in a state of forfeited existence which may be served through its registered agent for service of process, Wm. T. Dickson, at 703 McKinney Ave, #401, Dallas, Texas, 75202 (Dallas County).

3.     Defendant Dickson/Wells Partners, Inc. ("DWP") is a Texas Corporation which may be served through its registered agent for service of process, James D. Blume, at 6116 N. Central Expressway, Suite 250, Dallas, Texas, 75206 (Dallas County).

4.     Defendant Rike Ogden Figueroa Dickson Wells, PLLC ("ROFDW") is a Texas Professional Limited Liability Company which may be served through its registered agent for service of process, Luis A. Figueroa, at 1007 Walnut, McAllen, Texas, 78501 (Hidalgo County).

5.     Defendant Rike Ogden Figueroa Architects, Inc. ("ROFA") is a Texas Corporation which may be served through its registered agent for service of process, Luis A. Figueroa, at 1007 Walnut, McAllen, Texas, 78501 (Hidalgo County).

6.     Defendant Wells, Janousek Architects, PLLC ("WJA") is a Texas Professional Limited Liability Company which may be served through its registered agent for service of process, Robert Blair Johnson, at 4444 Windsor Parkway Dallas, Dallas, Texas, 75205 (Dallas County).

7.     Defendant Dan Arrowood ("Arrowood") is believed to be a resident of Texas. It is not known at this time where Arrowood may be served.

8.     Defendant Peach Engineering, LLC ("Peach") is an Alabama Corporation which may be served through its registered agent for service of process, William Alton Sherrer, Jr., at 1674 Headland Avenue, Dothan, Alabama, 36303 (Houston County).

9.     Defendant Rose Engineering Associates, Inc. ("Rose") is an Alabama Corporation which may be served through its registered agent for service of process, Jim Rose, at 403 S Alice

2

Street, Dothan, Alabama, 36301 (Houston County).

10.    Defendant Alton Stillwell d/b/a Stillwell Masonry, Company, Inc. ("Stillwell") is an Alabama Corporation which may be served through its registered agent for service of process, John Sievers, CPA, at 105 B Enterprise Court, Columbus, Georgia, 31904 (Muscogee County).

11.    Defendant J.W. Cox d/b/a J W Cox Masonry Incorporated ("Cox") is a Georgia Corporation which may be served through its registered agent for service of process, Jim W. Cox, at 1518 13th Avenue, Columbus, Georgia, 31901 (Muscogee County).

12.    Defendant Phenix Mechanical Contractors, Inc. ("Phenix") is a Georgia Corporation which may be served through its registered agent for service of process, Charles Turner, at 1801 Cusseta Road, Columbus, Georgia, 31901 (Muscogee County).

13.    Defendant Lott Sheet Metal Contractors, Inc. ("Lott") is a Georgia Corporation which may be served through its registered agent for service of process, Dennis E. Lott, at 8640 Battery Ct., Midland, Georgia, 31802 (Muscogee County).

14.    Defendant Phenix Commercial Glass and Mirror, Inc. ("Glass") is an Alabama Corporation which may be served through its registered agent for service of process, Tommy E. Bankston, at 4267 Highway 431 South, Seale, Alabama, 36875 (Russell County).

15.    Defendant YKK AP America, Inc. ("YKK") is a New York Corporation which may be served through its registered agent for service of process, C.T. Corporation System, at 1201 Peachtree Street, NE, Atlanta, Georgia, 30361 (Fulton County).

16.    Defendant H.J. Layfield, Inc. ("Layfield") is a Georgia Corporation which may be served through its registered agent for service of process, Johnathan H. Layfield, at 4454-A Warm Springs Road, Columbus, Georgia, 31909 (Muscogee County).

08/16/2005 01:26:59 PM    Claims, Centralized    6144645374-10    Page 10
08/16/2005    12:38    MULLIN INS AGENCY → ST AUTO CL OHIO                     NO.766    ⊡09

17.    Defendant Grant Environmental Contractors, Inc. ("Grant") is a Georgia

Corporation which may be served through its registered agent for service of process, James A.

Grant, at 7478 Wood Duck Lane, Midland, Georgia, 31820 (Muscogee County).

## JURISDICTION AND VENUE

18.    TSYS repeats and realleges each and every allegation set forth in Paragraphs 1

through 17 as if fully set forth herein.

19.    This Court has subject matter jurisdiction over this action.

20.    Venue is proper in this Court as to Stillwell, Cox, Phenix, Lott, Layfield, and

Grant as they maintain registered offices in Columbus, Georgia and are therefore subject to

venue in Muscogee County under O.C.G.A. § 14-2-510(b)(1). Peach, Rose, Arrowood, DWP,

ROFDW, ROFA, WJA, DWA, and Glass are non-resident persons and entities, not authorized to

do business in this state and with no registered agent in Georgia; as such, venue is proper in

Muscogee County as to these parties as Muscogee County is the county wherein a substantial

part of the business was transacted, the tortious act, omission, or injury occurred, or the real

property is located, and because this action involves claims brought against a resident of this

state subject to venue in Muscogee County. Venue as to YKK is proper in Muscogee County as

it is sued as a joint-tortfeasor as to Glass, who may be sued in Muscogee County, as highlighted

above.

21.    This Court has general personal jurisdiction over Phenix, Cox, YKK, Lott,

Layfield, and Grant and specific personal jurisdiction over Peach, Rose, Stillwell, Arrowood,

DWP, ROFDW, ROFA, WJA, DWA, and Glass pursuant to the U.S. and State Constitutions and

O.C.G.A. § 9-10-91.

4

22.    All conditions precedent to the filing of each claim of this lawsuit have occurred, or have been satisfied or waived.

## BACKGROUND

23.    TSYS repeats and realleges each and every allegation set forth in Paragraphs 1 through 22 as if fully set forth herein.

24.    TSYS is an affiliate of and handles the facilities and infrastructure management for Synovus Financial Corporation, a Georgia Corporation and financial services company which maintains a large corporate campus in Columbus, Georgia (Muscogee County).

25.    To meet the needs of Synovus employees and their families, in 1998 TSYS embarked on a plan to develop a childcare facility for children of employees on the Synovus corporate campus in Muscogee County. All of the named Defendants in this lawsuit knew or should have known of this intended purpose of the Project and the potential costs involved with any interruption in the child care activities to be carried out on the Project site.

26.    Based on representations of experience, expertise, and design quality, TSYS contracted with Architect Michael Wells, then a principal of ROFDW, and ROFDW, to design and coordinate the construction of what would be known as the TSYS Childcare Development Center (the "Project").

27.    Upon information and belief, ROFDW was a combination of ROFA and DWA and DWP. Upon information and belief, all of these entities were in existence during the Project work and it is believed that Mr. Wells' work on the Project involved and incorporated services, employees, and expertise from each of these entities.

28.    Upon information and belief, ROFDW, DWP, and DWA have been succeeded in interest by WJA and ROFA. Mr. Wells is currently a principal of WJA.

29.    Arrowood was a professional employee of ROFDW and assisted Wells in providing architectural services on the Project. Specifically, Mr. Arrowood certified contractor pay applications and certified substantial completion on the Project. Mr. Arrowood's current position is unknown.

30.    In preparing its design and architectural plan, ROFDW contracted with Peach in order to provide mechanical engineering services and oversight for the Project.

31.    Further, ROFDW contracted with Rose to provide structural engineering services and oversight for the Project.

32.    TSYS independently contracted with Grant to provide grading and earthwork services for the Project.

33.    After securing the relevant design, engineering, and grading services, TSYS contracted with Denson Contracting Company, a Georgia Corporation, to construct the Project. The contract balance of the Project was nearly $3 million.

34.    Upon information and belief, Denson contracted with Stillwell and Cox to supply masonry supplies and services on the Project, on Denson's behalf.

35.    Upon information and belief, Denson contracted with Phenix to supply mechanical work on the Project, on Denson's behalf.

36.    Upon information and belief, Denson contracted with Lott to provide and install the metal roof for the Project, on Denson's behalf.

37.    Further, upon information and belief, Denson contracted with Glass to install the storefront and windows of the Project, on Denson's behalf, which were designed and fabricated by YKK.

38.    In addition, upon information and belief, Denson contracted with Layfield to install and provide gypsum board and sheet rock for the Project, on Denson's behalf.

39.    The Project was declared substantially complete on August 12, 2001 and was fully completed shortly thereafter.

## PROJECT DEFECTS

40.    TSYS repeats and realleges each and every allegation set forth in Paragraphs 1 through 39 as if fully set forth herein.

41.    Several months after the completion of major construction, evidence of latent defects in the Project work and design became apparent in various aspects of the Project wall structures and associated areas. At that time, it was evident that water intrusion and other serious defects were damaging the Project along with other work and other property, in addition to diminishing the ability to use the Project for its intended purposes.

42.    In late 2004 to early 2005, as latent defects and instances of economic loss due to the defects emerged, numerous investigations and tests were conducted and performed on the Project, at the expense of TSYS, as it became clear that a serious water intrusion problem was developing within the Project walls and within the Project itself, as a result of faulty design and construction.

43.    After investigations commenced, it was determined that one contributing factor to the damage to the Project was a failure to install a vapor retarder/air barrier on the gypsum sheathing at the back of the wall cavity.

44.    In addition, the flashing around the interior part of the roof wall was inadequate and appeared to be contributing to the water intrusion into the wall cavity. There were also other points of water entry evident due to the defective condition of the roof.

7

08/17/2005    13:41    MULLIN INS AGENCY → ST AUTO CL BHAM                    NO.773    P01

45.    The installation of the sheet rock also appeared incomplete in that it was not installed up to the top of the roof deck, as required by the plans and specifications. It is believed that this failure has contributed to the water problems of the Project.

46.    Further, the grading of the Project was not performed according to the plans and specifications. The grading errors include incorrect sloping towards the building preventing proper drainage and the covering of weep holes that are designed to allow moisture to escape from the interior of the walls.

47.    Both errors in the design and fabrication of the windows, as well as their installation, were also contributors to the water issues, as the windows failed to properly keep water away from the wall cavity and failed to resist water penetration.

48.    In addition, it was determined that a leaking brick veneer was letting excessive amounts of moisture get through to the wall cavity, and eventually the interior wall of the Project. The mortar on this brick veneer is an air entrained mortar and is therefore porous. Further, the mortar did not bond well with the bricks and there was no evidence of a water repellent applied to the brick. To make matters worse, extensive accumulations of mortar droppings in the wall cavity has created "mortar bridges" allowing water to carry over to the gypsum from the brick veneer.

49.    It was determined that the issues with the masonry and wall water intrusion were caused or exacerbated by faulty or incomplete design work, poor buttering techniques, over mortaring, and the failure to cover and seal the gypsum, among other things.

50.    The issues with the masonry and wall cavity were exacerbated by the air conditioning system which was creating too much negative pressure—it was found that the HVAC system did not comply with the specifications for the Project and was not installed

8

08/17/2005    13:41    MULLIN INS AGENCY → ST AUTO LL 8MHM                             NO. 773    P02

according to the plans and specifications for the Project.

51.    Further, investigation showed insufficient flashing around the brick veneer, allowing water to drain into the wall.

52.    In addition, due to the moisture intrusion, steel columns within the wall structure have shown to be excessively rusted along with other welds and bolts, thus shortening the load-capacity and life-span of these components.

53.    The moisture intrusion and leaking caused by the various defects has caused damage to the Project itself, damage to other property, and a diminution of the value of the Project.

54.    Another defect that became apparent during the testing and inspections occurring in late 2004 and early 2005 was the non-compliance of the concrete foundation slab.

55.    The Project specifications called for steel supports and rebar to be embedded in the concrete slab that lies under the Project. The purpose of these supports is to provide a more rigid and structurally sound base for the building and to prevent cracking and movement caused by soil elasticity or other factors.

56.    Instead of the steel supports called for by the Project specification, a substitute fabric or fiberglass material was used to provide additional support to the concrete slab. However, such material fails to provide long term support and durability as the steel supports would have. The result is a shorter life-span for the structure from the ground up and an increase in the probability of cracking, infestation, and structural movement.

57.    After a comprehensive review of the various problems and defects associated with the Project, it was determined that the most efficient and cost-effective solution would be to "strip" the walls and veneer off of the structure of the building, clean the area, and then re-craft

9

03/17/2005    15:41    MULLIN INS AGENCY → ST HUTO CL BHHM                    NO. 773    P03

the walls and veneer around the existing structure, using a non-defective design and proper

construction methods. Even though such a remediation is far less expensive than a total

demolition and reconstruction, the cost is expected to reach nearly $5 million.

## DAMAGES TO TSYS

58.    TSYS repeats and realleges each and every allegation set forth in Paragraphs 1

through 57 as if fully set forth herein.

59.    As a result of the construction and design defects in the Project work, TSYS has

been forced to suffer numerous costs and expenses.

60.    Specifically, the water intrusion problem caused by the various defects has

greatly reduced the value of the Project as it cannot be used for its intended purpose.

61.    Further, as the Project was designed to act as a childcare center, TSYS has

incurred expenses in testing the center for air-quality and arranging for substitute

accommodations for the children.

62.    The inferior structural support system installed in the Project concrete slab has the

effect of causing a diminution of value in the Project, a shortening of the Project life-span, and

an increase in required periodic inspections. Moreover, the non-compliance of the concrete slab

will increase the likelihood of cracking, infestation, and structural movement.

63.    In addition, to remedy the defects in the Project, TSYS will have to devote

millions of dollars in resources to pay for remediation and renovation. All the while, TSYS will

be unable to use the facility, TSYS will have to continue to pay for substitute accommodations,

and the on-going construction will disrupt activities and other work on the Synovus corporate

campus.

64.    In sum, while certain costs may not yet be apparent, it is projected that in resolving the actual Project defects and the negative effects caused thereby, TSYS will be damaged in the range of $5 to $7 million.

## COUNT I – BREACH OF CONTRACT AGAINST GRANT

65.    TSYS repeats and realleges each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

66.    TSYS and Grant entered into a valid contract to perform the grading and earthwork services for the Project.

67.    Grant breached its express and implied duties to perform all of its work according to the plans and specifications and to perform its work in a non-defective and workmanlike manner. Specifically, this breach includes, but is not limited to, a failure to craft slopes in accordance with the plans and specifications, piling earth above the floor-line of the Project, and by negligently covering moisture weep holes, allowing moisture to build up.

68.    The result of Grant's breach is a contribution to and worsening of, the moisture intrusion problems of the Project as described in detail above.

69.    TSYS has been damaged by the contribution to and worsening of the moisture intrusion problems caused by Grant's breach.

## COUNT II – NEGLIGENT CONSTRUCTION AGAINST STILLWELL

70.    TSYS repeats and realleges each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

71.    Stillwell provided masonry services for the Project which were found to be defective and un-workmanlike in several different ways, as described above.

72.    TSYS, as owner of the Project known to Stillwell, and as beneficiary of all work done therein, was an imminently foreseeable victim of any breach of the duty to use reasonable care that may occur on the part of Stillwell during its provision of construction services and Project work.

73.    Thus, in providing construction services and materials on behalf and at the direction of Denson Contracting Company during its work on the Project, Stillwell owed TSYS a duty to use reasonable care and to provide its services in a manner that would not create or exacerbate potentially defective conditions.

74.    By failing to utilize proper construction methods and failing to provide non-defective services in the masonry work, Stillwell created or exacerbated defects in the Project and breached its duty of reasonable care to TSYS.

75.    But for these breaches of duty, the Project would not have suffered these defects.

76.    The failure of Stillwell to use reasonable care in its construction efforts proximately caused the defective nature of the Project.

77.    The failure of Stillwell to use reasonable care in its construction efforts, and the defects caused thereby, has damaged TSYS as described above.

## COUNT III – NEGLIGENT CONSTRUCTION AGAINST PHENIX

78.    TSYS repeats and realleges each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

79.    Phenix provided mechanical work for the Project which was found to be defective as described above as the system it installed creates too much negative pressure and exacerbates the moisture problems, among other things.

03/17/2006     15:41     MULLIN INS AGENCY → ST HUTO CL BHAM                    NO. 773     006

80.     TSYS, as owner of the Project known to Phenix, and as beneficiary of all work done therein, was an imminently foreseeable victim of any breach of the duty to use reasonable care that may occur on the part of Phenix during its provision of construction services and Project work.

81.     Thus, in providing construction services and materials on behalf and at the direction of Denson Contracting Company during its work on the Project, Phenix owed TSYS a duty to use reasonable care and to provide its services in a manner that would not create or exacerbate potentially defective conditions.

82.     By fabricating, installing, and providing a HVAC system that caused inordinate moisture build-up, Phenix created or exacerbated defects in the Project and breached its duty of reasonable care to TSYS.

83.     But for these breaches of duty, the Project would not have suffered these defects.

84.     The failure of Phenix to use reasonable care in its construction efforts proximately caused the defective nature of the Project.

85.     The failure of Phenix to use reasonable care in its construction efforts, and the defects caused thereby, has damaged TSYS as described above.

## COUNT IV – NEGLIGENT CONSTRUCTION AGAINST GLASS

86.     TSYS repeats and realleges each and every allegation set forth in Paragraphs I through 64 as if fully set forth herein.

87.     Glass provided windows and window installation for the Project which were found to be defective and contributory to the moisture problems as described above.

88.     TSYS, as owner of the Project known to Glass, and as beneficiary of all work done therein, was an imminently foreseeable victim of any breach of the duty to use reasonable

care that may occur on the part of Glass during its provision of construction services and Project work.

89.    Thus, in providing construction services and materials on behalf and at the direction of Denson Contracting Company during its work on the Project, Glass owed TSYS a duty to use reasonable care and to provide its services in a manner that would not create or exacerbate potentially defective conditions.

90.    By failing to inspect the windows it installed and by failing to install the windows in a defect-free and workmanlike manner, Glass created or exacerbated defects in the Project and breached its duty of reasonable care to TSYS.

91.    But for these breaches of duty, the Project would not have suffered these defects.

92.    The failure of Glass to use reasonable care in its construction efforts proximately caused the defective nature of the Project.

93.    The failure of Glass to use reasonable care in its construction efforts, and the defects caused thereby, has damaged TSYS as described above.

## COUNT V – NEGLIGENT CONSTRUCTION AGAINST LAYFIELD

94.    TSYS repeats and realleges each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

95.    Layfield installed and provided work for the gypsum board and sheet rock on the Project, which were found to be improperly or inadequately installed as described above.

96.    TSYS, as owner of the Project known to Layfield, and as beneficiary of all work done therein, was an imminently foreseeable victim of any breach of the duty to use reasonable care that may occur on the part of Layfield during its provision of construction services and Project work.

14

97.    Thus, in providing construction services and materials on behalf and at the direction of Denson Contracting Company during its work on the Project, Layfield owed TSYS a duty to use reasonable care and to provide its services in a manner that would not create or exacerbate potentially defective conditions.

98.    By failing to perform its work in a defect-free manner and by failing to follow the plans and specifications, Layfield created or exacerbated defects in the Project and breached its duty of reasonable care to TSYS.

99.    But for these breaches of duty, the Project would not have suffered these defects.

100.    The failure of Layfield to use reasonable care in its construction efforts proximately caused the defective nature of the Project.

101.    The failure of Layfield to use reasonable care in its construction efforts, and the defects caused thereby, has damaged TSYS as described above.

### COUNT VI – NEGLIGENT CONSTRUCTION GRANT

102.    TSYS repeats and realleges each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

103.    Grant performed the grading and earthwork for the Project which were found to be improperly performed as described in Count I.

104.    TSYS, as owner of the Project known to Grant, and as beneficiary of all work done therein, was an imminently foreseeable victim of any breach of the duty to use reasonable care that may occur on the part of Grant during its provision of construction services and Project work.

105.    Thus, in providing construction services and materials on behalf and at the direction of TSYS during its work on the Project, Grant owed TSYS a duty to use reasonable

care and to provide its services in a manner that would not create or exacerbate potentially defective conditions.

106.    By failing to perform its work in a defect-free manner and by failing to follow the plans and specifications, Grant created or exacerbated defects in the Project and breached its duty of reasonable care to TSYS.

107.    But for these breaches of duty, the Project would not have suffered these defects.

108.    The failure of Grant to use reasonable care in its construction efforts proximately caused the defective nature of the Project.

109.    The failure of Grant to use reasonable care in its construction efforts, and the defects caused thereby, has damaged TSYS as described above.

## COUNT VII – NEGLIGENT CONSTRUCTION AGAINST COX

110.    TSYS repeats and realleges each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

111.    Cox provided masonry services which were found to be defective and un-workmanlike in several different ways, as described above.

112.    TSYS, as owner of the Project known to Cox, and as beneficiary of all work done therein, was an imminently foreseeable victim of any breach of the duty to use reasonable care that may occur on the part of Cox during its provision of construction services and Project work.

113.    Thus, in providing construction services and materials on behalf and at the direction of Denson Contracting Company during its work on the Project, Cox owed TSYS a duty to use reasonable care and to provide its services in a manner that would not create or exacerbate potentially defective conditions.

114.    By performing un-workmanlike and defective work, Cox created or exacerbated defects in the Project and breached its duty of reasonable care to TSYS.

115.    But for these breaches of duty, the Project would not have suffered these defects.

116.    The failure of Cox to use reasonable care in its construction efforts proximately caused the defective nature of the Project.

117.    The failure of Cox to use reasonable care in its construction efforts, and the defects caused thereby, has damaged TSYS as described above.

## COUNT VIII – NEGLIGENT CONSTRUCTION AGAINST LOTT

118.    TSYS repeats and realleges each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

119.    Lott provided roofing services which were found to be defective and incomplete, as described above.

120.    TSYS, as owner of the Project known to Lott, and as beneficiary of all work done therein, was an imminently foreseeable victim of any breach of the duty to use reasonable care that may occur on the part of Lott during its provision of construction services and Project work.

121.    Thus, in providing construction services and materials on behalf and at the direction of Denson Contracting Company during its work on the Project, Lott owed TSYS a duty to use reasonable care and to provide its services in a manner that would not create or exacerbate potentially defective conditions.

122.    By performing un-workmanlike and defective work, Lott created or exacerbated defects in the Project and breached its duty of reasonable care to TSYS.

17

123.    But for these breaches of duty, the Project would not have suffered these defects.

124.    The failure of Lott to use reasonable care in its construction efforts proximately caused the defective nature of the Project.

125.    The failure of Lott to use reasonable care in their construction efforts, and the defects caused thereby, has damaged TSYS as described above;

## COUNT IX – NEGLIGENCE AGAINST YKK AND GLASS

126.    TSYS repeats and realleges each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

127.    Glass provided and installed window framing and glass for the Project.

128.    Said framing and glass was manufactured and designed by YKK for use in the Project.

129.    As highlighted above, the windows themselves, their framing, and the way the windows were installed are causing moisture intrusion into the Project as well as exacerbation of the other moisture problems of the Project.

130.    TSYS, as owner of the Project known to Glass, and as beneficiary of all work done therein, was an imminently foreseeable victim of any breach of the duty to use reasonable care that may occur on the part of Glass during its provision of construction services and Project work.

131.    TSYS, as the Project owner who YKK had provided detailed and specific drawings and plans to, was known to YKK to the extent that it was foreseeable to YKK that TSYS would be injured by a breach of its duty of care. Even if TSYS was not known to YKK

specifically, it was a window purchaser—a member of a group of foreseeable victims of YKK's failure to use reasonable care in designing and fabricating windows and frames.

132.    In fabricating, designing, and installing the windows for the Project, both Glass and YKK owed TSYS a duty of reasonable care. Specifically, Glass and YKK had a duty to design, fabricate, provide, and install windows that would not be defective and/or cause damage to the other property of TSYS.

133.    By failing to use reasonable care in fabricating, providing, and installing the windows and framing, Glass and YKK created or exacerbated defects in the Project and breached their duty of reasonable care to TSYS.

134.    But for these breaches of duty, the Project would not have suffered these defects.

135.    The failure of Glass and YKK to use reasonable care in their construction efforts proximately caused the defective nature of the Project.

136.    The failure of Glass and YKK to use reasonable care in their construction efforts, and the defects caused thereby, have damaged TSYS as described above.

## COUNT X – PROFESSIONAL MALPRACTICE AGAINST DWP, ROFDW, ROFA, WJA, AND DWA

137.    TSYS repeats and realleges each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

138.    DWP, ROFDW, ROFA, WJA, and DWA, together or through their principals, provided architectural services and oversight for the Project.

139.    TSYS, as owner of the Project known to DWP, ROFDW, ROFA, WJA, and DWA, and as beneficiary of all work done therein, was an imminently foreseeable victim of any

08/17/2005    15:45    MULLIN INS AGENCY → ST HUTU LL BHHM                    NU.'779   P04

breach of the professional duty of care that may occur on the part of DWP, ROFDW, ROFA, WJA, and DWA during these parties' professional services and Project work.

140.    In addition, as to ROFDW (and possibly other entities as further investigation may show), a contractual relationship existed between it and TSYS, providing an additional implied duty that ROFDW perform its work using its professional level or care.

141.    Thus, in providing architectural services on the Project, DWP, ROFDW, ROFA, WJA, and DWA owed a duty to TSYS to perform their professional services using the requisite professional level of care, skill, and competence.

142.    As the architectural work and oversight provided by DWP, ROFDW, ROFA, WJA, and DWA have proven to be defective in that, as-built, the plan of the Project allows and causes moisture to enter the structure, or contributes to or exacerbates other moisture intrusions, causing damage to the Project and other property, these parties have breached their duty to TSYS to perform their professional services using a professional level of care, skill, and competence.

143.    But for the breach of this professional duty, the Project would not have suffered these defects.

144.    The failure of DWP, ROFDW, ROFA, WJA, and DWA to use the requisite level of professional care was the proximate cause of the defective nature of the Project.

145.    The failure of DWP, ROFDW, ROFA, WJA, and DWA to use the requisite level of professional care, and the defects caused thereby, have damaged TSYS as outlined above.

## COUNT XI – PROFESSIONAL MALPRACTICE AGAINST PEACH

146.    TSYS repeats and realleges each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

05/17/2006    13:43    MULLIN INS AGENCY → ST AUTO CL BHAM                    NO. 774    P05

147.    TSYS, as owner of the Project known to Peach, and as beneficiary of all work done therein, was an imminently foreseeable victim of any breach of the professional duty of care that may occur on the part of Peach, during this party's professional services and Project work.

148.    Thus, in providing engineering and oversight services on the Project, Peach owed a duty to TSYS to perform its professional services using the requisite professional level of care, skill, and competence.

149.    As the mechanical engineering work and oversight provided by Peach, has proven to be defective in that Peach failed to properly inspect and verify the compliance and sufficiency of the HVAC system and its installation, Peach has breached its duty to TSYS to perform their professional services using a professional level of care, skill, and competence.

150.    But for the breach of this professional duty, the Project would not have suffered these defects.

151.    The failure of Peach to use the requisite level of professional care was the proximate cause of the defective nature of the Project.

152.    The failure of Peach to use the requisite level of professional care, and the defects caused thereby, have damaged TSYS as outlined above.

## COUNT XII – PROFESSIONAL MALPRACTICE AGAINST ARROWOOD

153.    TSYS repeats and realleges each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

154.    TSYS, as owner of the Project known to Arrowood, and as beneficiary of all work done therein, was an imminently foreseeable victim of any breach of the professional duty of care that may occur on the part of Arrowood during his professional services and Project work.

155.    Thus, in certifying pay applications and other documents such as the certificate of substantial completion, Arrowood had a duty to TSYS to perform his services using a professional level of care, skill, and competence.

156.    As some aspects of the contractor work certified by Arrowood have proven to be defective, Arrowood breached his duty to TSYS to perform his services using a professional level of care, skill, and competence; specifically, Arrowood failed to use his professional level of skill and care in inspecting and verifying that the contractor work did not allow or cause moisture intrusion or was not otherwise defective.

157.    But for the breach of this professional duty, the Project would not have suffered these defects.

158.    The failure of Arrowood to use his requisite level of professional care was the proximate cause of the defective nature of the Project.

159.    The failure of Arrowood to use his requisite level of professional care, and the defects caused thereby, have damaged TSYS as outlined above.

### COUNT XIII – PROFESSIONAL MALPRACTICE AGAINST ROSE

160.    TSYS repeats and realleges each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

161.    TSYS, as owner of the Project known to Rose, and as beneficiary of all work done therein, was an imminently foreseeable victim of any breach of the professional duty of care that may occur on the part of Rose during its professional services and Project work.

162.    Thus, in providing oversight services and inspection duties for the concrete and structural work, Rose had a duty to TSYS to perform its services using a professional level of care, skill, and competence.

22

163.    As the concrete slab, as-built, is manifestly non-compliant with the specifications and contains inferior substitutions that Rose did not inform TSYS of, Rose breached its duty to TSYS to perform his services using a professional level of care, skill, and competence.

164.    But for the breach of this professional duty, the Project would not have suffered defects.

165.    The failure of Rose to use its requisite level of professional care was the proximate cause of the concrete slab issues.

166.    The failure of Rose to use its requisite level of professional care, and the defects caused thereby, has damaged TSYS as outlined above.

**WHEREFORE**, Plaintiff, expressly reserving its contractual or other right to mediate and/or arbitrate any dispute described herein or relating to any dispute described herein, with any party named herein or not named herein, respectfully requests:

a.    As to Counts I through VIII, and XI through XIII, that the Court award Plaintiff a judgment against the Defendant named therein, for the sum of damages as proven by the Plaintiff at trial;

b.    As to Count IX and X, that the Court award Plaintiff a judgment against the Defendants named therein, jointly and severally, for the sum of damages as proven by the Plaintiff at trial;

c.    That the Court award the Plaintiff its costs in this action from Defendants, jointly and severally, and

d.    That Plaintiff have such other and further relief as the Court may deem just and proper.

This _/0ᵗʰ_ day of August, 2005.

SMITH, CURRIE & HANCOCK, LLP

Thomas E. Abernathy, IV
Georgia Bar No. 000700

James B. Taylor
Georgia Bar No. 141563

2600 Harris Tower
233 Peachtree Street, N.E.
Atlanta, Georgia 30303
Phone: (404) 521-3800
Fax: (404) 688-0671

BUCHANAN & LAND, LLP

By:
Jerry A. Buchanan
Georgia Bar No. 092200

P. O. Box 2848
Columbus, Georgia 31902
Phone: (706) 323-2848
Fax: (706) 323-4242

Attorneys for Total System Services, Inc.

GEORGIA, MUSCOGEE COUNTY.
Served the defendant ALFON STILLWELL
DBA STILLWELL MASONRY CO. Inc
a corporation by leaving a copy of the
within action and summons with DEXTER
LEVERS C.F.O. and charge
of the office and place of doing business
of said Corporation in the County.
This ____ day of AUGUST 20 05
Deputy Sheriff, Muscogee County, GA