IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| STATE AUTO PROPERTY & CASUALTY INSURANCE COMPANY, | ) ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.: 3:06-cv-00435-MEF** |
| | ) | |
| STILLWELL MASONRY COMPANY, INC., | ) ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**DEFENDANT STILLWELL MASONRY COMPANY, INC.'S BRIEF IN
OPPOSITION TO PLAINTIFF, STATE AUTO PROPERTY & CASUALTY
INSURANCE COMPANY'S, MOTION FOR SUMMARY JUDGMENT**</u>

Comes Now the Defendant, Stillwell Masonry Company, Inc. ("Stillwell"), by and through its undersigned counsel, and files this Brief in Opposition to the Plaintiff, State Auto Property & Casualty Insurance Company's ("State Auto"), Motion for Summary Judgment as follows:

<u>**STATEMENT OF FACTS**</u>

The Defendant does not dispute the factual allegations contained in the Plaintiff's Statement of Narrative Facts. However, the Defendant does add that in addition to the Plaintiff's Complaint in the underlying cause of action, there has been substantial discovery that further elaborates upon the specific allegations of the Plaintiff's allegations in that case. Specifically, the Plaintiff in the underlying litigation retained experts that have produced reports regarding the alleged damage to the building in the underlying case and the alleged cause of such damage. The first report, prepared by Patrick McCabe of Working Buildings, LLC, in Atlanta, Georgia, is an Indoor Environmental Quality Survey that analyzed the presence of fungi and mold in the subject building. (For the

Court's convenience, a copy of that report is attached as Exhibit 1 to the Defendant's Evidentiary Submissions). The second report, prepared by Charles W. Graham, a forensic architect and construction specialist from College Station, Texas, sought to identify the causes of the water intrusion into the subject building the resulting fungi and mold growth. (For the Court's convenience, a copy of that report is attached as Exhibit 2 to the Defendant's Evidentiary Submissions).

In the executive summary of Mr. McCabe's report he found "airborne fungi levels requiring demolition and remediation action" and "swab fungi mold conditions requiring demolition and remediation action". (McCabe report, p. 2).[1] Mr. McCabe states in his conclusions that the primary cause of the moisture intrusion is that "[t]he vinyl wall covering material is not permeable (does not breathe) and as heat always goes to cold, the moist air vapor penetrates the permeable wall until it reaches the vinyl wall covering, then condenses and saturates the gypsum wallboard and creates a food source for microbial growth". (McCabe report, Conclusion, p. 1). Thus, Mr. McCabe is saying that moisture penetrates the brick veneer, which was constructed by Stillwell, and then reaches the vinyl wall covering, which was not constructed by Stillwell, where it condenses and saturates the wallboard so that fungi and mold can grow.

In Mr. Graham's report he states that "the walls are constructed with brick veneer on the exterior, a cavity behind the veneer, gypsum sheathing on the exterior of the steel studs, batts insulation between the studs, gypsum wallboard on the interior, and vinyl wallpaper finish on the wallboard." (Graham report, ¶ 1, section 1.0). Thus, it is cleaer that the Plaintiff in the underlying litigation claims that the brick veneer constructed by Stillwell Masonry was defective and that because of the defective brick veneer, damage

---

[1] The specific quantitative findings of Mr. McCabe regarding the fungi and mold conditions at the subject building are located at pages 5 through 8 of his report.

2

has been caused to the building, which includes the moisture intrusion to the gypsum wallboard and the alleged fungi and mold problems.

The crucial error in the Plaintiff's analysis of this case is that the Plaintiff oversimplifies the alleged damages and complaints of the Plaintiff in the underlying cause of action. It is undisputed that Mr. Stillwell constructed the brick veneer on the building. The Plaintiff in the instant case repeatedly states that Stillwell built the wall to the building, but this is simply incorrect. Stillwell had no responsibility for constructing the gypsum sheathing on the exterior of the steel studs, the batts insulation between the studs, the gypsum wallboard on the interior and the vinyl wallpaper finish on the wallboard, all of which are allegedly damaged by moisture intrusion through the brick veneer. These are all items that were built or installed by other contractors and allegedly damaged as a result of the water intrusion through the brick veneer.

## STANDARD OF REVIEW

In addition to the standard of review set out by the Plaintiff in its Brief in Support of its Motion for Summary Judgment, the Defendant, Stillwell Masonry, wishes to emphasize that it is the non-movant in this Motion for Summary Judgment. Accordingly, in considering State Auto's Motion for Summary Judgment this Court is required to "believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor". Dunlap v. Bellsouth Telecommunications, Inc., 431 F.Supp.2d 1210, 1215 (M.D. Ala. 2006). Further, it is the burden of the movant, State Auto, to establish that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

3

Furthermore, in addition to the standard of review for a summary judgment, there are additional standards that are applicable in a declaratory judgment action by an insurer against an insured regarding the coverage afforded by an insurance policy. First, "[a]n insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint about what gave rise to the cause of action against the insured." American States Ins. Co. v. Martin, 662 So. 2d 245, 247 (Ala. 1995) (citing American States Ins. Co. v. Cooper, 518 So.2d 708 (Ala. 1987)). Secondly, "[t]he contract shall be construed liberally in favor of the insured and strictly against the insurer." Id. (citing Tyler v. Insurance Co. of North America, 331 So.2d 641 (Ala.1976)). Lastly, "[e]xclusions are to be interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company that drafted and issued the policy." Id. (citing Alliance Ins. Co. v. Reynolds, 494 So.2d 609 (Ala.1986); Employers Ins. Co. of Alabama v. Jeff Gin Co., 378 So.2d 693 (Ala.1979)).

## LEGAL ARGUMENT

I.     The allegations in the underlying lawsuit constitute an "occurrence" under the policy as interpreted by Alabama law. See United States Fidelity & Guaranty Co. v. Bonitz Insulation Co. of Alabama, 424 So. 2d 569 (Ala. 1982); Moss v. Champion Ins. Co., 442 So. 2d 26 (Ala. 1983).

In its Motion for Summary Judgment the Plaintiff argues that the allegations in the underlying cause of action do not constitute an "occurrence" under the policy. In support of this contention, the Plaintiff cites the cases United States Fidelity & Guaranty Co. v. Warwick Development Co., Inc., 446 So. 2d 1021 (Ala. 1984), and Berry v. South Carolina Ins. Co., 495 So. 2d 511 (Ala. 1985). The Defendant asserts that the case law

4

relied upon by the Plaintiff does not support the proposition for which it is offered and that these cases are otherwise inapplicable to the instant case. Warwick and Berry stand for the proposition that any damages claimed in the underlying lawsuit regarding any alleged defect in the work performed by Stillwell – the brick work – is not covered by the subject policy. Stillwell does not dispute that there is a valid, enforceable "your work" exclusion in the subject policy. However, what the policy does cover is damage caused to the overall project from the alleged defects in Stillwell's work.

In Warwick, which the Defendant concedes involved a similar policy definition of the term "occurrence" as the policy in the instant case, the Plaintiff in the underlying litigation brought claims against the insured, Warwick Development, alleging that the Warwick had misrepresented material facts regarding the construction of their residence. Warwick, 446 So. 2d at 1022. First, the Court stated, without explanation, that the damages complained of by the Plaintiffs did not constitute an "occurrence" under the policy provisions. Id. at 1023. Further, the Court held that any allegations regarding misrepresentation by Warwick Development was not an occurrence. Id.

In its opinion in Warwick the Court noted that "[f]or a contrary holding under circumstances amounting to 'an occurrence' see Moss v. Champion Ins. Co., 442 So. 2d 26 (Ala. 1983)." Warwick, 446 So. 2d at 1023. In Moss, the Plaintiff in the underlying cause of action brought suit against the insured, L.J. Moss and his company Central Roofing and Termite Company, for damage to her house allegedly caused by a defective roof installed by Moss. Moss, 442 So. 2d at 26. Moss' insurer, Champion Insurance Company, filed a declaratory judgment action after Moss tendered the underlying lawsuit to them for indemnity and defense. Id. at 27. The trial court held that the Plaintiffs claim

5

in the underlying lawsuit was not an 'accident' under the terms of the policy and Moss appealed. Id.

On appeal the Alabama Supreme Court reversed, holding that under Alabama law the term 'accident' does not exclude human fault called negligence. Moss, 442 So. 2d at 28. (citing United States Fidelity and Guaranty Company of Alabama v. Bonitz Insulation Company of Alabama, 424 So. 2d 569, 571 (Ala. 1982)). Importantly, the Court noted that its decision contrasted with its decision in Warwick because Warwick involved an alleged misrepresentation wherein the instant case involved alleged property damage. Id. at 29. Specifically, the Court held as follows:

> We contrast this finding with our opinion in *United States Fidelity & Guaranty Co. v. Warwick Development Co.*, 446 So.2d 1021 in which we had the same policy definition of an "occurrence." In *United States Fidelity & Guaranty Co.*, we held that a "reliance upon misrepresentations" claimed by the plaintiffs did not constitute an occurrence. We further found under the facts of that case that there was no "property damage" within the definition of the policy provisions.

Moss, 442 So. 2d at 29.

Similarly, in Berry, the Plaintiff correctly notes that the Court held that the damages complained of in the underlying cause of action did not constitute an "occurrence" within the meaning of the applicable policy. Berry, 495 So. 2d 511, 513. However, the Plaintiff misconstrues the basis for this holding. In Berry, the Plaintiffs in the underlying case contracted with Gilbreath & Couch Construction Company to construct an addition to their home. Id. at 511. After licensing difficulties arose regarding the project and it was not completed, the Plaintiffs filed suit against the construction company. Id. at 512. Gilbreath & Couch tendered the case to their insurer, South Carolina Insurance Company, which in turn filed a suit seeking a declaratory

judgment that there was no coverage for the allegations in the underlying lawsuit. Id.
The trial court held that there was no coverage and Gilbreath & Couch appealed. Id.

On appeal the Alabama Supreme Court affirmed the trial court because it found
that although the work itself may have been defective, which was excluded from
coverage under the "your product" exclusion in the policy, there was no damage from the
work that would have been covered by the policy. Berry, 495 So. 2d at 512. The Court
set out the deposition testimony of the Plaintiffs in the underlying case and showed how
they testified that there were no complaints of damage to the residence other than the
allegedly defective nature of the work itself. Id. at 512-513. Based on this testimony the
Court held as follows:

> There is nothing in the deposition of Mary Berry or William Berry
> that alleges any damage to the existing structure as a result of "an
> accident, including continuous or repeated exposure to conditions...."
> Rather, all of the "damages" are related to the work done pursuant to the
> contract. The insurance policy specifically addresses this type of damage
> in its "work product exclusion," which states:
>
> > This insurance policy does not apply to property damage to
> > work performed by or on behalf of the named insured
> > arising out of the work or any portion thereof, or out of
> > materials, parts or equipment furnished in connection
> > therewith.

Berry, 495 So. 2d at 513.

The Plaintiffs in Berry unsuccessfully argued that their case was analogous to the
Alabama Supreme Court's decision in United States Fidelity & Guaranty Company v.
Bonitz Insulation Company of Alabama, 424 So. 2d 569 (Ala. 1982). In Bonitz the facts
in the underlying case showed that the insured, Bonitz Insulation Company, had
constructed a roof on a gymnasium as part of a school project for the City of Midfield.
Bonitz, 424 so. 2d at 570. Soon after the roof was completed it began to leak, and despite
attempts at remedial efforts, the roof was ultimately replaced. Id. at 571. Suit was filed

7

by the City of Midfield against Bonitz, which then tendered the claim to its insurers,
U.S.F. & G and Employer's Mutual Liability Insurance Company of Wisconsin, which
had taken over the policy from U.S.F. & G. Id. When U.S.F. & G. and Employer's
denied coverage Bonitz filed a declaratory judgment action. Id.

The trial court held, without explaining the basis for its decision, that the insurers
were obligated to defend and indemnify Bonitz and the insurers appealed that decision.
Bonitz, 424 So. 2d at 571. First, the Supreme Court noted that it disagreed with U.S.F. &
G's contention that if Bonitz was negligent in the construction of the roof then there
could be no 'accident' or 'occurrence' under the terms of the policy. Id. As stated
previously, the Court held that under Alabama law the term 'accident' does not
necessarily exclude human fault called negligence. Id. (citing Employer's Insurance Co.
of Alabama v. Alabama Roofing & Siding Co., Inc., 271 Ala. 394, 124 So. 2d 261
(1960)). Then, after reviewing the applicable provisions of the insurance policy, which
are substantively similar to provisions of the applicable policies in the instant case, the
Supreme Court held that the damage to the gymnasium caused by the allegedly defective
roof was covered. Id. at 573. Specifically, the Court held as follows:

> If damage to the roof itself were the only damage claimed by the City
> of Midfield, the exclusions would work to deny Bonitz any coverage
> under the USF&G policy. The City of Midfield, however, also claims
> damage to ceilings, walls, carpets, and the gym floor. *We think there can
> be no doubt that, if the occurrence or accident causes damage to some
> other property than the insured's product, the insured's liability for such
> damage becomes the liability of the insurer under the policy.* See
> *Employers Casualty Co. v. Brown-McKee, Inc.*, 430 S.W.2d 21
> (Tex.Civ.App.1968); *Aetna Casualty & Surety Co. v. Harvey W. Hottel*,
> Inc., 289 F.2d 457 (D.C.Cir.1961).

Bonitz, 424 So. 2d at 573 (emphasis added) (citing Employer's Casualty Co. v. Brown-
McKee, Inc., 420 S.W.2d 21 (Tex. Civ. App. 1968); Aetna Casualty & Surety Co. v.
Harvey W. Hottel, Inc., 289 F.2d 457 (D.C. Cir. 1961)).

It is undisputed in the instant case that the Plaintiff in the underlying cause of action is claiming damages for items other than the allegedly defective brick veneer constructed by Stillwell. The Defendant has already conceded that any damages claimed by the Plaintiff in the underlying cause of action related to the brick veneer itself are excluded from coverage under the applicable policy provisions. However, the damage to the building – namely the water intrusion and resulting fungi and mold – caused by the allegedly defective brick veneer is covered by the policy.

The distinction between the decision in <u>Berry</u> and the decision in <u>Bonitz</u> was discussed by the Alabama Court of Civil Appeals in <u>Garrett v. Auto-Owners Insurance Co.</u>, 689 So. 2d 179 (Ala. Civ. App. 1997). The Court noted that in <u>Bonitz</u> the Plaintiff in the underlying cause of action alleged damages caused by the insured's allegedly defective work product, which was covered, whereas in <u>Berry</u> the Plaintiff simply alleged a defective work product itself, which was not covered due to the work product exclusions. In the instant case it is undisputed that the Plaintiff in the underlying cause of action alleges that Stillwell negligently constructed the brick veneer on the subject building, which <u>is not</u> covered, and that the allegedly defective brick veneer has caused damage to the building, which <u>is</u> covered. Therefore, Stillwell respectfully requests this Court to deny the Plaintiff's Motion for Summary Judgment on this basis.

II.    **The alleged damages in the underlying lawsuit are not excluded under the "property damage" exclusions of the policy.**

The Plaintiff asserts in its Motion for Summary Judgment that "[t]he underlying lawsuit makes clear the alleged damage is to the building's walls, the only area in which Stillwell worked". (Plaintiff's brief, p. 15). This statement is at best a gross

oversimplification of the nature of the project and Stillwell's work on the project. As the Defendant's name implies, Stillwell Masonry was responsible for constructing the brick veneer of the building. Stillwell was not responsible for constructing, erecting, building or otherwise involved in the construction of the gypsum board or interior walls of the building, which according to the Plaintiff's Complaint have been damaged due to moisture intrusion through the brick veneer constructed by Stillwell. (See McCabe report and Graham report, Exhibits 1 & 2 to Defendant's Evidentiary Submissions, respectively).

The Plaintiff also argues that several different exclusions regarding damage to Stillwell's work exclude coverage in this case. The Defendant has already conceded that the policy excludes any damage claimed by the Plaintiff in the underlying suit regarding the brick veneer itself. However, as argued previously, it is also equally clear under the law that the damage caused by the allegedly defectively constructed brick veneer – namely, the water intrusion and resulting fungi and mold – are covered under the policy.

Lastly, in this argument the Plaintiff asserts that "[c]laims for purely economic or monetary loss typically do not constitute 'property damage'", and cites three cases that allegedly support this proposition. However, Defendant has reviewed these cases and they do not even appear to support this proposition. Therefore, without proper citation to authority which supports this argument the Defendant is unable to effectively respond to this argument. Accordingly, the Defendant respectfully requests this Court to deny the Plaintiff's Motion for Summary Judgment.

**III.    Any fungi or bacterial damages claimed in the underlying suit are covered because the damage, if any, occurred prior to the Plaintiff's exclusion of such damages.**

In its brief the Plaintiff correctly notes that under Alabama law insurance coverage is triggered when the damages occur, and not when the events causing the damage took place. See American States Ins. Co. v. Martin, 652 So. 2d 250 (Ala. 1994); Warwick, 446 So. 2d at 1024 ("as a general rule the time of an 'occurrence' of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time the complaining party was actually damaged".).

In its brief the Plaintiff alleges that the date of when the damage occurred is unclear from the Complaint in the underlying case. The Plaintiff states that "TSS's damages appeared no earlier than late 2001 and then were more completely diagnosed in late 2004 to early 2005". (Plaintiff's Brief in Support of Motion for Summary Judgment, p. 11). However, a complete reading of the Plaintiff's Complaint in the underlying litigation reveals that the damage to the building has been continuous and surfaced within "several months" after the completion of the project in Georgia. It is undisputed that substantial completion of the project occurred on August 12, 2001. (See ¶ 39, Exhibit 2, Plaintiff's Evidentiary Submissions). Further, it is undisputed that according to the Plaintiff's Complaint in the underlying cause of action "several months after the completion of major construction evidence of latent defects in the Project work and design became apparent. . . [and] it was evident water intrusion and other serious defects were damaging the Project along with other work and other property." (See ¶ 41, Exhibit 2, Plaintiff's Evidentiary Submissions).

Webster's dictionary defines "several" as "more than two but fewer than many". For the benefit of this argument, the Defendant will generously presuppose that the when

11

the Plaintiff used the term "several" in its Complaint in the underlying suit it meant a year. Even using this assumption, the damage to the Plaintiff's building occurred and manifested itself prior to State Auto's issuance and enforcement of the fungi and bacterial exclusion in 2004. Thus, State Auto's reliance upon the exclusion as a basis for excluding coverage in the underlying case is unfounded because at the time that damages occurred to the building in the underlying suit the fungi and bacterial exclusion had not been included as a policy provision. This is discerned from a simple reading of the Plaintiff's Complaint in the underlying litigation on which the Plaintiff in the instant case bases its entire Complaint for Declaratory Judgment and Motion for Summary Judgment. Thus, any further reading of the Plaintiff's argument regarding this exclusion is moot because the exclusion was not in force at the time that the damage occurred. Accordingly, the Defendant respectfully requests this Court to deny the Plaintiff's Motion for Summary Judgment.

### IV.    The Plaintiff's Motion for Summary Judgment is premature and due to be denied until discovery can be completed.

Under Alabama law "'[I]f there is any uncertainty as to whether the complaint alleges facts that would invoke the duty to defend, the insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured.'" Porterfield v. Audubon Indemnity Co., 2002 AL 849 (Ala. 2002). (Citing Blackburn v. Fidelity & Deposit Co. of Maryland, 667 So. 2d 661, 668 (Ala. 1995)). In the instant case, the only evidence relied upon by the Plaintiff in its Motion for Summary Judgment is the Complaint filed in the underlying cause of action. There is no other evidence offered in support of its Motion for Summary Judgment

12

On or about January 23, 2007, this Court entered a Uniform Scheduling Order in this case. (See Document 18). In its order the Court set a discovery deadline of October 19, 2007, and expert disclosure deadlines for the Plaintiff of August 6, 2007, and September 6, 2007, for the Defendant. (Doc. 18, ¶¶ 7 & 8). Further, the Court set a dispositive motion deadline for August 6, 2007, and a pretrial conference for November 2, 2007. Id. at ¶¶ 1 & 2. The Defendant has served discovery upon the Plaintiff and a Rule 30(b)(6) deposition notice upon the Plaintiff in this case, but said discovery has not been answered nor is it due as of this filing. In the event that this Court finds that the foregoing arguments in opposition to the Plaintiff's Motion for Summary Judgment are not persuasive, the Defendant respectfully requests this Court to withhold ruling on the Plaintiff's Motion for Summary Judgment until the Defendant can complete its discovery in this matter.

## CONCLUSION

The failure of the Plaintiff's argument in the instant case is embodied in its myopic focus on the alleged damage to the brick veneer constructed by Stillwell Masonry and its oversimplification of the term "walls" in the Plaintiff's underlying Complaint. It is undisputed that in the Plaintiff's Complaint in the underlying litigation it is alleged that the brick veneer constructed by Stillwell Masonry was defective and allowed water intrusion that affected the gypsum sheathing on the exterior of the steel studs, the batts insulation between the studs, the gypsum wallboard on the interior, and the vinyl wallpaper finish on the wallboard. Based on the holdings in Moss and Bonitz it is clear that the Plaintiff does not owe coverage to the Defendant for any allegations related specifically to his work – the brick veneer – but the Plaintiff does owe and the policy

provides coverage to the Defendant for any damages allegedly caused to the building by the defective brick veneer. Accordingly, the Defendant respectfully requests this Court to deny the Plaintiff's Motion for Summary Judgment.

Further, the Defendant asserts that the Plaintiff's reliance on the fungi and bacterial exclusion is also misplaced because it is clear from the Plaintiff's Complaint in the underlying litigation that the damage to the building occurred over a year before State Auto incorporated that exclusion into Stillwell's policy. Therefore, any argument or reliance upon the fungi and bacterial exclusion is improper because the damage occurred prior to the effective date of that endorsement. Accordingly, the Defendant respectfully requests this Court to deny the Plaintiff's Motion for Summary Judgment on this basis as well.

Lastly, the Defendant requests this Court to refrain from ruling on the Plaintiff's Motion for Summary Judgment to permit the Defendant to conclude discovery in the event that the Court does not find the Defendant's arguments persuasive.

Respectfully Submitted,

/s/ Kevin T. Shires
Kevin T. Shires (ASB-4382-e64k)
Attorney for the Defendant,
Stillwell Masonry Company, Inc.

OF COUNSEL:
Sprain & Shires, P.C.
1707 29th Court South
Homewood, Alabama  35209
(205) 802-7037
Email: kts@sprainlaw.com

14

## CERTIFICATE OF SERVICE

Please take notice that the foregoing pleading has been served on the following counsel of record in this cause of action by e-filing the same with the United States District Court for the Middle District of Alabama, and by emailing it this the 30th day of March, 2007.

Christopher Zulanas, Esq.
Jim Moss, Esq.
Friedman, Leak, Dazzio, Zulanas & Bowling, P.C.
3800 Colonnade Parkway
Suite 650
Birmingham, Alabama   35243

/s/ Kevin T. Shires
OF COUNSEL

15