UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
**EASTERN DIVISION**

| | |
|---|---|
| STATE AUTO PROPERTY & | ) |
| CASUALTY INSURANCE COMPANY, | ) |
| | ) CIVIL ACTION NUMBER: |
| Plaintiff, | ) **3:06-CV-0435-DRB** |
| | ) |
| vs. | ) |
| | ) |
| STILLWELL MASONRY COMPANY INC., | ) |
| | ) |
| Defendant | ) |

**STATE AUTO PROPERTY & CASUALTY INSURANCE COMPANY'S
BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff in the above-styled action, **State Auto Property & Casualty Insurance Company ("State Auto")**, and in support of its Motion for Summary Judgment, submits this legal memorandum brief.

**I.  Narrative Facts**

The claim in question arises out of the construction of and alleged subsequent damage to a large building housing a childcare development center which is located in or near Columbus, Georgia.  The building was built for and is owned by Total System Services, Inc. ("TSS").  TSS filed a lawsuit in the Superior Court of Muscogee County, Georgia on August 10, 2005 which bears Civil Action Number: SU05CV-2610-7.  (State Auto's Evidentiary Submission, Exhibits 1 and 2).

In its lawsuit, TSS names many of the contractors and professionals involved in the design and construction of the childcare development center as defendants.  (State Auto's Evidentiary Submission, Exhibit 2 and hereinafter referred to as the "underlying lawsuit").  Among those is State Auto insured, Alton Stillwell d/b/a Stillwell Masonry Company, Inc. ("Stillwell"). Specifically, TSS contends Denson Contracting Company served as the general contractor on the project and

subcontracted masonry service  and supply work to Stillwell.  (Underlying Complaint, ¶34).  The project was declared substantially complete on August 12, 2001 and was fully completed shortly thereafter.  (Underlying Complaint, ¶39).  However, TSS claims that evidence that latent defects in construction and design "became apparent in various aspects of the Project wall structures and associated areas" several months after completion.  (Underlying Complaint, ¶41).  At that time, the building was allegedly suffering from water intrusion. *Id.*

Then, in late 2004 to early 2005, TSS contends "defects and instances of economic loss due to the defects emerged" and investigations and tests were conducted to determine the source and scope of the alleged defects.  (Underlying Complaint, ¶42).  TSS alleges the investigations and tests revealed "a serious water intrusion problem was developing within the Project walls and within the Project itself, as a result of faulty design and construction."  *Id.*  Finally, TSS concludes "it was determined that the most efficient and cost-effective solution would be to 'strip' the walls and veneer off of the structure of the building, clean the area and then re-craft the walls and veneer around the existing structure, using a non-defective design and proper construction methods." (Underlying Complaint, ¶57).

Based upon those allegations, TSS asserts various counts against the defendants. A negligent construction count is asserted against Stillwell.  (Underlying Complaint, Count II).  TSS specifically claims "Stillwell provided masonry services for the Project which were found to be defective and un-workmanlike" and "by failing to utilize proper construction methods and failing to provide non-defective services in the masonry work, Stillwell created or exacerbated defects in the Project...".  (Underlying Complaint, ¶¶ 71, 74).  As damages, TSS claims it has been forced to suffer numerous costs and expenses, the value of the Project has greatly reduced and it cannot be used for

its intended purpose, it incurred expenses in testing the Center for air-quality and arranging for substitute accommodations for childcare participants and that it will have to devote monies to pay for remediation and renovation, while incurring additional costs for substitute accommodations in the meantime. (Underlying Complaint, ¶¶ 59-64).

Stillwell first obtained insurance coverage with State Auto in February of 2001. Specifically, State Auto first issued policy number SOC0015601, a Series I Contractor's Policy, to Stillwell on February 22, 2001. (State Auto's Evidentiary Submission, Exhibit 3). The provisions of Stillwell's policy remained the same on renewals in 2002 and 2003. However, the commercial general liability coverage form changed on the 2004 renewal to include a "fungi or bacteria" exclusion as an endorsement. (State Auto's Evidentiary Submission, Exhibits 3 and 4).

State Auto is defending Stillwell against the claims in the underlying lawsuit under a reservation of rights. Here, State Auto seeks a declaration of its rights and obligations under its policies and asserts it is entitled to a judgment as a matter of law that no coverage exists under those policies.

## II.  Relevant Policy Provisions

State Auto's Series I Contractor's Policy contains numerous provisions which apply to the underlying lawsuit and Stillwell's coverage claim. Among other provisions, the policy states:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

•••

a. ...However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply....

•••

b. This insurance applies to "bodily injury" and "property damage" only if:

(1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2)  The "bodily injury" or "property damage" occurs during the policy period.

•••

2.  Exclusions

This insurance does not apply to:

(j)  Damage to Property

"Property damage" to:

(5)  That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

•••

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

k.  Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

4

l.  Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.  Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

•••

**SECTION V – DEFINITIONS**

•••

8.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.  You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a.  The repair, replacement, adjustment or removal of "your product" or "your work"; or

b.  Your fulfilling the terms of the contract or agreement.

•••

13.   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

•••

16.  "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

•••

17.  "Property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

•••

20.  "Your product" means:

a.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

•••

21.  "Your work" means:

a.  Work or operations performed by you or on your behalf; and

b.  Materials, parts or equipment furnished in connection with such work or operations.

6

•••

**This endorsement changes the policy.  Please read it carefully.**

**AMENDMENT OF INSURING AGREEMENT – KNOWN INJURY OR DAMAGE**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)**

Paragraph **1.  Insuring Agreement** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

•••

(3)  Prior to the policy period, no insured listed under Paragraph **1**. of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

•••

d.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1**. of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

•••

7

**This endorsement changes the policy.  Please read it carefully.**

**FUNGI OR BACTERIA EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability**:

**2.  Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

a.  "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b.  Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in ay way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

B.  The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability**:

**2.  Exclusions**

This insurance does not apply to:

8

**Fungi or Bacteria**

a.  "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

b.  Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.**  The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew any and mycotoxins, spores, scents or byproducts produced or released by fungi.

### III.  <u>Summary Judgment Standard</u>

Summary judgment is proper if, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact.  *Samples on behalf of Samples v. Atlanta*, 846 F. 2d 1328, 1330 (11th Cir. 1988).  The moving party bears the initial burden of establishing the non-existence of a material fact issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Once a party makes a *prima facie* showing that it is entitled to summary judgment, the burden shifts to the non-moving party to come forward with "substantial evidence" in support of each element of its cause of action.  *Rollins v. TechSouth, Inc.,* 833 F. 2d 1525, 1528 (11th Cir. 1987); *Hanners v. Balfour Guthrie, Inc.*, 564 So. 2d 412 (Ala. 1990).  "Substantial evidence" is evidence of such weight and quality that fair-minded persons in the

exercise of impartial judgment reasonably can infer the existence of the fact sought to be proved. *West v. Founders Life Assurance Co.*, 547 So. 2d 870, 871 (Ala. 1989).

## IV.  Legal Argument

There are a number of reasons the claims in the underlying lawsuit are not covered by State Auto's policies.  First, the allegations and damages in the underlying lawsuit do not amount to an "occurrence" causing "property damage".  Second, even if they did, they are excluded by provisions contained within the commercial general liability coverage parts of Stillwell's policies, including the "fungi or bacteria" exclusion contained in the policy issued to Stillwell on February 22, 2004.  Each of these issues are addressed separately below.

### A.      The "occurrence".

Alabama law is clear that under an "occurrence" type of general liability policy, insurance coverage is triggered when the damages occur and not when the events causing the damage took place. *See, e.g., American States Ins. Co. v. Martin*, 652 So. 2d 250 (1994); *Utica Mut. Ins. Co. v. Tuscaloosa Motor Co.*, 329 So. 2d 82 (Ala. 1976).  "As a general rule the time of an "occurrence" of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time the complaining party was actually damaged." *U. S. Fid. & Guar. Co. v. Warwick Dev. Co., Inc.*, 446 So. 2d 1021, 1024 (Ala. 1984), quoting *Muller Fuel Oil Co. v. Ins. Co. of North America*, 95 N. J. Super. 564, 232 A. 2d 168 (1967).  Consequently, coverage is afforded when an alleged action or inaction and resulting damages occur within a policy period.  *Id.*.

Here, the complaint does not specify when Stillwell completed its work, but does state the Project as a whole was deemed "substantially complete" on August 12, 2001 and was fully completed shortly thereafter. (Complaint ¶ 39). The complaint further states that "several months

after the completion," evidence of defects in the work and design began to become apparent and in late 2004 to early 2005, investigations and tests revealed a water intrusion problem was developing within the walls of the building. (Complaint ¶ 41). As a consequence, TSS's damages appeared no earlier than late 2001 and then were more completely diagnosed in late 2004 to early 2005. The first evidence of mold growth appears in an indoor environmental quality survey prepared by Working Buildings, LLC on November 18, 2004. (State Auto's Evidentiary Submission, Exhibit 5).

However, the underlying lawsuit and TSS's alleged damages claims do not trigger coverage under State Auto's policy unless there is an "occurrence" within the meaning of the policy. The policy defines "occurrence" as follows:

> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Under Alabama law, it is clear that a contractor's failure to complete its work or failure to complete its work appropriately does not amount to an "accident" and therefore, cannot be an "occurrence." For example, in *USF&G Co. v. Warwick Development, Inc*., 446 So. 2d 1021 (Ala. 1984), the Alabama Supreme Court was asked to determine whether a comprehensive general liability policy provided coverage for alleged faulty workmanship and non-compliant materials in the construction of the residence. Pertinent facts included that the homeowners sued the contractor/seller of their home and their first mortgage holder alleging unworkmanlike construction and misrepresentation of material fact. *Warwick Development Co, Inc*., 446 So. 2d at 1022. The contractor/seller filed a third-party complaint against its insurers, claiming both were liable under comprehensive general liability policies issued to it after both insurers refused to defend it in the lawsuit. *Id.*. On the day of trial, one of the insurance carriers was dismissed on summary judgment

11

and USF&G's motion for summary judgment was denied. *Id..* at 1023. After trial, USF&G appealed and the contractor/seller cross appealed. *Id..*

The first issue addressed by the Alabama Supreme Court was whether USF&G's policy, like the subject State Auto policy, provided coverage for alleged faulty workmanship and non-complying materials in the construction when the alleged damage was confined to the structure itself. *Id..* The USF&G policy defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Ultimately, the Alabama Supreme Court determined damage to the structure allegedly resulting from the insured's work or lack thereof was not an "occurrence" within that definition. *Id..*

The Alabama Supreme Court reached an identical finding based on similar facts in *Berry v. South Carolina Ins. Co.*, 495 So. 2d 511 (Ala.1995). In *Berry*, homeowners brought an action against contractors based on the contractor's alleged failure to finish work at their home and the contractors requested their comprehensive general liability insurance carrier to provide a defense to the lawsuit. *Berry*, 495 So. 2d at 512. The carrier then filed suit seeking declaratory relief and eventually, the trial court entered summary judgment in favor of the insurer.

On appeal, the Alabama Supreme Court addressed whether the claims involved in the lawsuit amounted to an "occurrence" as that term was defined by the comprehensive general liability policy. Ultimately, the court determined that "all of the 'damages' [were] related to work done pursuant to the [contractor's] contract" and consequently, did not amount to an "occurrence" which was defined as "an accident, including continuous or repeated exposure to conditions...".

Here, the claims in the underlying lawsuit are virtually identical to those asserted by the homeowners in both *Warwick Development Co., supra* and *Berry, supra*. In the underlying lawsuit, TSS claims Stillwell provided masonry services which were found to be defective and unworkmanlike, failed to use proper construction methods and failed to provide non-defective services in its masonry work. (Underlying Complaint ¶¶ 71 and 74). As a result, a water intrusion problem allegedly developed "within the project walls and within the project itself," which was addressed by removing Stillwell's work, cleaning and then "re-crafting the walls and veneer" of the structure. (Underlying Complaint, ¶ 57). Like the policies in question in *Warwick Development Co.* and *Berry*, State Auto's policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Consequently, like the homeowners' claims in *Warwick Development Co.* and *Berry* which were based upon alleged damage to structures themselves, the claims by TSS do not amount to an "occurrence" under State Auto's policy and no coverage exists for those claims under the policy.

**B.     Even if there was an "occurrence," policy exclusions apply.**

Alabama courts are often asked to determine what amounts to "property damage" as that term is typically defined in commercial general liability policies. Claims for purely economic or monetary loss typically do not constitute "property damage". *See, American States Ins. Co. v. Martin*, 662 So. 2d 245 (Ala. 1995). In *American States Insurance Co. v. Martin*, the Supreme Court of Alabama considered a certified question from the United States District Court regarding whether applicable policies of American States Insurance Company provided a duty to defend claims asserted by plaintiffs in the underlying lawsuit related to claims of financial loss due to alleged improper

investments of the plaintiff's funds. *Id*. at 246-247. In answering the certified question, the Alabama Supreme Court provided as follows:

> Without deciding whether Martin's alleged exposure of the Berger's money to unsafe financial conditions, or his alleged misrepresentations, amount to an "occurrence" under either policy, we find it clear that no coverage for property damage under either policy exists unless the Berger's Complaint alleges potential damage resulting from physical injury to tangible property. *Id*. at 248.

After distinguishing "tangible property" in part as property "...which may be felt or touched..." and "intangible property" as property which "...cannot be readily located, and there is no method by which its existence or ownership can be ascertained in the state of its situs...", the court determined that because the plaintiffs' claims did not amount to damage to "tangible property" and were instead of economic loss, no coverage existed under the American States policies under the provision regarding property damage. *Id*. at 250.

Here, most, if not all, of TSS's claims are for such economic loss and do not amount to "property damage." Specifically, TSS claims in its lawsuit it was forced to suffer numerous costs and expense, devoted monies to pay for remediation and renovation and incurred costs for substitute accommodations. (Underlying Complaint, ¶¶ 59-64). Consequently, State Auto's policies do not provide coverage for the claims in the underlying complaint.

Even if there were an "occurrence" and "property damage," a number of policy exclusions apply. Specifically, the State Auto policy provisions exclude from coverage "damage to property," "damage to your work," "damage to impaired property or property not physically injured" and "recall of products, work, or impaired property." (State Auto's Evidentiary Submission, Exhibit 3, Section

14

II – Exclusions (j), (k), (l), (m) and (n)).  Those exclusions each apply to the claims in the underlying

lawsuit.

### 1.    Exclusion (j) – Damage to Property.

State Auto's policy plainly provides:

> This insurance does not apply to:
>
> **(j) Damage To Property**
>
> "Property damage to" to:
>
> 5.   That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> 6.  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> •••
>
> Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.
>
> Paragraph 6 of this exclusion does not apply to "property damage" included in the "products–completed operations hazard."

A comparison of the claims in the underlying lawsuit to the language in this exclusion shows

the underlying lawsuit is excluded from coverage.  Even if it is assumed the claims in the underlying

lawsuit amount to an "occurrence" causing "property damage," which State Auto disputes, any such

alleged damage necessarily arose out of Stillwell's work.  The underlying lawsuit makes clear the

alleged damage is to the building's walls, the only area on which Stillwell worked.  Clearly,

Stillwell's brick veneer was a part of the building's walls and any damage to the walls allegedly

arose out of Stillwell's work on them.  Thus, because the alleged "property damage," if that is found

15

to exist, is to the walls of the building, (the area on which Stillwell worked) and allegedly arose out of its work, the claims are excluded from coverage by Exclusion (j)(5). To the extent any alleged damage exists to any part of the building other than the walls on which Stillwell worked, that would be damage to property that must be "restored, repaired or replaced" because Stillwell's work was incorrectly performed and thus excluded under Exclusion (j)(6).

### 2.    Exclusion (k) – Damage to Your Product.

State Auto's policy further provides:

That it does not apply to:

**(k) Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

The policy defines "your product" as:

21. "Your Product":

   a. means:

1. Any goods or products, other than real property, manufactured, sold, handled, sold, handled, distributed or disposed of by:

   (a) You.

The underlying lawsuit makes clear that TSS's claims arise out of Stillwell's allegedly defective and unworkmanlike masonry work. As a contractor, Stillwell provided its product, namely the construction of the brick veneer walls of the building, to TSS and now, TSS contends that the walls are defective and must be remediated using proper construction techniques. From the nature of the claims made in the underlying lawsuit, it is apparent there is alleged damage to Stillwell's

16

product, the brick veneer walls.  Consequently, any claims in the underlying lawsuit related to damage to the brick veneer are excluded from coverage under State Auto's policy.

### 3.  Exclusion (l) – Damage to your Work.

State Auto's policy further provides:

> The subject policy does not apply to:
>
> **(l) Damage To Your Work**
>
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The policy defines "your work" as:

> 22.  "Your work":
>
>    a. means:
>
> 1.  Work or operations performed by your or on your behalf; and
>
> 2.  Work or operation materials, parts or equipment furnished in connection with such.

Again, Stillwell's work in question was the masonry construction of the walls of the project. It is the walls which TSS claims were found to be defective and constructed in an unworkmanlike manner and allegedly had to be stripped and re-crafted using non-defective design and proper construction methods.  Since TSS alleges damage to the brick veneer, Stillwell's work itself, it is excluded by the terms of the State Auto policy.

### 4.    Exclusion (m) – Damage To Impaired Property.

State Auto's policy also provides:

> The policy defines "impaired property" as:
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This is exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

If it is determined there is damage to property other than Stillwell's "product" or "work" as claimed in the underlying lawsuit, then any such property would fall within the definition of "impaired property" in State Auto's policy.  In its lawsuit, TSS contends "Stillwell provided Masonry services for the project which were found to be defective and unworkmanlike by failing to utilize proper construction methods and failing to provide non-defective services in the masonry work."  (Underlying Complaint ¶¶ 71and 74).  It further claims that the walls and veneer had to be stripped from the structure of the building and the walls re-crafted using a non-defective design and proper construction methods.  In other words, any alleged damage to TSS's building other than the brick veneer would be "impaired property" since the damage to it arises directly out of Stillwell's alleged defective work.  As such, any damage to any property other than Stillwell's "product" or "work" would be damage to "impaired property" and thereby excluded from coverage under State Auto's policy.

5.    **Recall of Products, Work Or Impaired Property.**

Finally, State Auto's policy provides:

> Damages claimed for any loss, cost or expense incurred by your or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
>
> (1) "Your product";
>
> (2) "Your work";or
>
> (3) "Impaired property"'
>
> If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Again, as TSS contends Stillwell constructed the veneer walls in a defective and unworkmanlike manner requiring stripping and re-crafting of the walls around the existing structure. Consequently, any alleged damage to Stillwell's product (the walls themselves) or damage to any property other than Stillwell's "product" or "work" resulting in damage to " impaired property" is excluded by the plain language of the State Auto policy.

C.    **No coverage exists pursuant to the fungi or bacteria exclusion.**

Unquestionably, the claims asserted by TSS regarding moisture intrusion pursuant to the defective and unworkmanlike construction of the walls of the project necessarily involve claims related to mold or mildew as TSS asserts in ¶ 61 of its complaint that it has incurred expense for air quality testing. (Underlying Complaint ¶ 61).  That testing began in October of 2004 and revealed mold and mildew allegedly requiring remediation.  (State Auto's Evidentiary Submission, Exhibit 5).  Significantly, as of February of 2004, the applicable State Auto policy included a "fungi or

bacteria exclusion."  The State Auto policy provides the following regarding the fungi or bacteria exclusion:

> **A.**  The following exclusion is added to Paragraph **2.,** Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**
>
> **2. Exclusions**
>
> This insurance does not apply to:
>
> **Fungi or Bacteria**
>
> **a.**  "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.
>
> **b.**  Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying up, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi' or bacteria, by any insured or by any other person or entity.
>
> •••
>
> **C.**  The following definition is added to the **Definitions** Section:
>
> "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

In the underlying lawsuit, the alleged mold growth discovered in October of 2004 was the source of remediation work eventually done by TSS.  (State Auto's Evidentiary Submission, Exhibit 5).  That remediation plan included the removal of vinyl wall covering material, gypsum wallboard, wall mounted insulation and removal of Stillwell's brick veneer itself.  (State Auto's Evidentiary

Submission, Exhibits 5 and 6).  Consequently, any "property damage" to the extent it is found to exist for the claims in the underlying lawsuit, would fall within the fungi or bacteria exclusion made a part of State Auto's policy when the alleged mold damage appeared (namely in October of 2004).

Although to date it does not appear Alabama appellate courts have had the opportunity to address a fungi or bacteria exclusion, it is unquestionable that this exclusion is applicable to the claims asserted by TSS against Stillwell and as a result, any claim for alleged mold damage in the underlying lawsuit is excluded from coverage.  For example, in *State Farm Lloyd's v. Chandler*, 2005 U. S. Dist. Lexis 44285, the United States District Court for the Eastern District of Texas concluded that coverage was not available to State Farm Lloyd's insured who allegedly failed to properly inspect, maintain and repair an apartment in which plaintiffs in the underlying lawsuit lived. In reaching its decision, the Court primarily relied upon a mold exclusion which specifically excluded coverage for injuries arising out of, or exposure to or contact with mold.  *Id...* at 17. Accordingly, summary judgment was granted in favor of State Farm Lloyd's on the issue of whether it had a duty to defend its insured in the underlying lawsuit. *Id.*.

Pertinent facts in S*tate Farm Lloyd's*, included that the insured's failure to inspect, maintain and repair the apartment lead to water and moisture intrusion creating an environment conducive to mold growth.  *Id.*.  State Farm Lloyd's sought declaratory judgment contending that the claims asserted against its insured were not covered due to a mold exclusion contained in the policy.  The mold exclusion at issue provided the following:

In all policies, the following exclusion is added under **BUSINESS LIABILITY EXCLUSIONS:**

[Under Coverage L, this insurance does not apply:]

to any:

a. **bodily injury, property damage, personal injury** or **advertising injury** arising out of the actual alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any **fungus;**

(1) at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured; or...

**DEFINITIONS**

In all policies, the following definition is added under **DEFINITIONS:**

**fungus** means any type or form of fungi, including mold or mildew, and any mycotoxins, spores, scents or by products produced or released by fungi. *Id.* at 7, 8.

The insured argued on appeal that its answer included a denial of the alleged exposure to mold at the premises covered by the policy which created a genuine issue of material fact precluding State Farm Lloyd's summary judgment. *Id..* at 8. However, the United States District Court for the Eastern District of Texas recognized that the underlying plaintiff's complaint alleged bodily injury and death related to exposure to mold. *Id..* at 13. Giving the mold exclusion a broad, general and comprehensive interpretation, the court determined that the underlying plaintiff's allegations had at least an "incidental relationship" to contact with or exposure to mold making the mold exclusion applicable to the underlying plaintiff's claims. *Id..* at 12.

Likewise, the allegations in TSS's lawsuit against Stillwell have at least an incidental relationship to "bodily injury" or "property damage" which occurred due to alleged or threatened

22

inhalation, contact with, exposure to, existence of, or presence of "fungi or bacteria" within the subject building. Just as State Farm Lloyd's was entitled to summary judgment based on the mold exclusion in place in its policy, State Auto is also entitled to summary judgment based on the fungi or bacteria exclusion included within its policy issued to Stillwell. The plain language of TSS's complaint regarding its damages claim related to air quality testing makes it clear that it is seeking damages related to the existence of "fungi or bacteria" as defined in State Auto's policy issued to Stillwell. Therefore, summary judgment in favor of State Auto is due to be granted as no coverage exists pursuant to the fungi or bacteria exclusion in the subject policy.

Another recent decision regarding the application of a fungi or bacteria exclusion is *Union Ins. Co. v. Williams Contracting, Inc., et al.*, United States District Court for the Western District of Virginia, Charlottesville Division, 2006 U. S. Dist. Lexis 35919. In *Union Insurance Company*, the United States District Court for the Western Division of Virginia considered motions for summary judgment filed by Union Insurance Company and Cincinnati Insurance Company arguing they had no duty to defend or indemnify their insured, a general contractor who had been sued in the underlying lawsuit regarding construction of a residence. *Id.*. One of the exclusions raised by the insurers in arguing that coverage did not exist was a fungi or bacteria exclusion which provided:

> By special endorsement, coverage also does not extend to "[b]odily injury or property damage'...which would not have occurred but for the...alleged...inhalation of...exposure to, existence of, or presence of any 'fungi' or bacteria on or within a building...[or] Any loss, cost or expenses arising out of...removing...or in any way responding to...'fungi'...". (*Fungi or Bacteria Exclusion*, PA (2)(a)). Fungi is defined to include mold.

*Id.* at 12.

A portion of the underlying plaintiff's allegations included claims of exposure to mold in the basement of the residence due to the insurer's faulty and unworkmanlike construction. *Id.*. at 24. Thus, the United States District Court for the Western District of Virginia concluded that the insurance carrier had no duty to defend or indemnify their insured related to any of the plaintiff's claims alleging damages of exposure to mold. *Id.*

Here, TSS's claims are based on water intrusion into the walls of the building and testing and cleaning of mold in its building. Just as was the case in *Union Insurance Company*, the mold exclusion in question here applies and eliminates coverage for the underlying lawsuit.

## V. <u>Conclusion</u>

In conclusion, it is clear no coverage exists under State Auto's policies as the allegations of the underlying lawsuit do not amount to an "occurrence" and no covered "property damage" is at issue. Even if there were an "occurrence" and "property damage", the claims in the underlying lawsuit are excluded by numerous provisions in State Auto's policies.

WHEREFORE, PREMISES CONSIDERED, State Auto moves for summary judgment as no genuine issue of material fact exist and judgment as a matter of law in favor of State Auto is due to be granted.

Respectfully submitted,

*s/ Chris Zulanas*

Christopher J. Zulanas
James W. Moss
Attorneys for State Auto Property &
Casualty Insurance Company

**OF COUNSEL:**
FRIEDMAN LEAK
3800 Colonnade Parkway, Suite 650
Post Office Box 43219
Birmingham, Alabama 35243
(205) 278-7000
(205) 278-7001 Fax
www.friedmanleak.com

## CERTIFICATE OF SERVICE

I hereby certify I have caused a copy of the foregoing pleading to be electronically filed via CM/ECF and served on counsel listed below this date:  **August 6, 2007.**

Mr. Robert H. Sprain, Jr.
Mr. Kevin T. Shires
SPRAIN & SHIRES, P.C.
1707 - 29th Court South
Homewood, AL 35209

*s/ Chris Zulanas*
OF COUNSEL