**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| **STATE AUTO PROPERTY &** ) | |
| **CASUALTY INSURANCE COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 3:06-cv-00435-MEF** |
| ) | |
| **STILLWELL MASONRY** ) | |
| **COMPANY, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

<u>**DEFENDANT STILLWELL MASONRY COMPANY, INC.'S BRIEF IN**</u>
<u>**OPPOSITION TO PLAINTIFF, STATE AUTO PROPERTY & CASUALTY**</u>
<u>**INSURANCE COMPANY'S, MOTION FOR SUMMARY JUDGMENT**</u>

Comes Now the Defendant, Stillwell Masonry Company, Inc. ("Stillwell"), by and through its undersigned counsel, and files this Brief in Opposition to the Plaintiff, State Auto Property & Casualty Insurance Company's ("State Auto"), Motion for Summary Judgment as follows:

<u>**STATEMENT OF FACTS**</u>

The Defendant does not dispute the factual allegations contained in the Plaintiff's Statement of Narrative Facts.  However, the Defendant does add that in addition to the Plaintiff's Complaint in the underlying cause of action, there has been substantial discovery that further elaborates upon the specific allegations of the Plaintiff's allegations in that case.   Specifically, the Plaintiff in the underlying litigation retained experts that have produced reports regarding the alleged damage to the building in the underlying case and the alleged cause of such damage.  The first report, prepared by Patrick McCabe of Working Buildings, LLC, in Atlanta, Georgia, is an Indoor Environmental Quality Survey that analyzed the presence of fungi and mold in the subject building.  (For the

Court's convenience, a copy of that report was attached as Exhibit 1 to the Defendant's Evidentiary Submissions, doc. 30). The second report, prepared by Charles W. Graham, a forensic architect and construction specialist from College Station, Texas, sought to identify the causes of the water intrusion into the subject building and the resulting fungi and mold growth. (For the Court's convenience, a copy of that report is attached was Exhibit 2 to the Defendant's Evidentiary Submissions, doc. 30).

In the executive summary of Mr. McCabe's report he found "airborne fungi levels requiring demolition and remediation action" and "swab fungi mold conditions requiring demolition and remediation action". (McCabe report, p. 2).[1] Mr. McCabe states in his conclusions that the primary cause of the moisture intrusion is that "[t]he vinyl wall covering material is not permeable (does not breathe) and as heat always goes to cold, the moist air vapor penetrates the permeable wall until it reaches the vinyl wall covering, then condenses and saturates the gypsum wallboard and creates a food source for microbial growth". (McCabe report, Conclusion, p. 1). Thus, Mr. McCabe is saying that moisture penetrates the brick veneer, which was constructed by Stillwell, and then reaches the vinyl wall covering, which was not constructed by Stillwell, where it condenses and saturates the wallboard so that fungi and mold can grow.

In Mr. Graham's report he states that "the walls are constructed with brick veneer on the exterior, a cavity behind the veneer, gypsum sheathing on the exterior of the steel studs, batts insulation between the studs, gypsum wallboard on the interior, and vinyl wallpaper finish on the wallboard." (Graham report, ¶ 1, section 1.0). Thus, it is clear that the Plaintiff in the underlying litigation claims that the brick veneer constructed by Stillwell Masonry was defective and that because of the defective brick veneer damage

---

[1] The specific quantitative findings of Mr. McCabe regarding the fungi and mold conditions at the subject building are located at pages 5 through 8 of his report.

has been caused to the underlying surfaces of the building, which includes the moisture intrusion to the gypsum wallboard and the alleged fungi and mold problems.

The crucial error in the Plaintiff's analysis of this case is that the Plaintiff oversimplifies the alleged damages and complaints of the Plaintiff in the underlying cause of action. It is undisputed that Mr. Stillwell constructed the brick veneer on the building. The Plaintiff in the instant case repeatedly states that Stillwell built the wall to the building, but this is simply incorrect. Stillwell had no responsibility for constructing the gypsum sheathing on the exterior of the steel studs, the batts insulation between the studs, the gypsum wallboard on the interior and the vinyl wallpaper finish on the wallboard, all of which are allegedly damaged by moisture intrusion through the brick veneer. These are all items that were built or installed by other contractors and allegedly damaged as a result of the water intrusion through the brick veneer.

## RELEVANT POLICY PROVISIONS

The Defendant admits that the Plaintiff has correctly quoted the relevant policy provisions of the applicable policies. The Defendant simply disagrees with the interpretation of those provisions by the Plaintiff.

## STANDARD OF REVIEW

In addition to the standard of review set out by the Plaintiff in its Brief in Support of its Motion for Summary Judgment, the Defendant, Stillwell Masonry, wishes to emphasize that it is the non-movant in this Motion for Summary Judgment. Accordingly, in considering State Auto's Motion for Summary Judgment this Court is required to "believe the evidence of the non-movant and must draw all justifiable inferences from the

evidence in the non-moving party's favor". Dunlap v. Bellsouth Telecommunications, Inc., 431 F.Supp.2d 1210, 1215 (M.D. Ala. 2006). Further, it is the burden of the movant, State Auto, to establish that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Furthermore, in addition to the standard of review for a summary judgment, there are additional standards that are applicable in a declaratory judgment action by an insurer against an insured regarding the coverage afforded by an insurance policy. First, "[a]n insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint about what gave rise to the cause of action against the insured." American States Ins. Co. v. Martin, 662 So. 2d 245, 247 (Ala. 1995) (citing American States Ins. Co. v. Cooper, 518 So.2d 708 (Ala. 1987)). Secondly, "[t]he contract shall be construed liberally in favor of the insured and strictly against the insurer." Id. (citing Tyler v. Insurance Co. of North America, 331 So.2d 641 (Ala.1976). Lastly, "[e]xclusions are to be interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company that drafted and issued the policy." Id. (citing Alliance Ins. Co. v. Reynolds, 494 So.2d 609 (Ala.1986); Employers Ins. Co. of Alabama v. Jeff Gin Co., 378 So.2d 693 (Ala.1979)).

## LEGAL ARGUMENT

I.     **The allegations in the underlying lawsuit constitute an "occurrence" under the policy as interpreted by Alabama law. <u>See</u> <u>United States Fidelity & Guaranty Co. v. Bonitz Insulation Co. of Alabama</u>, 424 So. 2d 569 (Ala. 1982); <u>Moss v. Champion Ins. Co.</u>, 442 So. 2d 26 (Ala. 1983).**

First, the Defendant does agree with the Plaintiff that the underlying policies at issue in this case are "occurrence" policies and that "occurrence" policy coverage is triggered when the damages occur. However, the Defendant disagrees with the Plaintiff's assertion or suggestion that the first time there was any damage to the building in the underlying lawsuit was 2004. The reports submitted by Mr. McCabe and Mr. Graham identified diagnosed the damage to the underlying building on the dates of their respective reports, but there is nothing in their reports that suggests that the damage caused by the allegedly defective brick veneer was not a continuing and on-going problem through each of the applicable policy periods in question. As the Plaintiff admits in its brief, the plaintiff's complaint in the underlying cause of action states that "several months after completion" of the project evidence of defects in the work began to become apparent. Thus, the Defendant asserts that under each of the applicable policies it is clear that there was damage to the underlying building caused by the Defendant's allegedly defective brick veneer that triggered coverage under each of the applicable policies.

In its Motion for Summary Judgment the Plaintiff argues that the allegations in the underlying cause of action do not constitute an "occurrence" under the applicable policies. In support of this contention, the Plaintiff cites the cases <u>United States Fidelity & Guaranty Co. v. Warwick Development Co., Inc.</u>, 446 So. 2d 1021 (Ala. 1984), and <u>Berry v. South Carolina Ins. Co.</u>, 495 So. 2d 511 (Ala. 1985). The Defendant asserts that

the case law relied upon by the Plaintiff does not support the proposition for which it is offered and that these cases are otherwise inapplicable to the instant case. Warwick and Berry stand for the proposition that any damages claimed in the underlying lawsuit regarding any alleged defect in the work performed by Stillwell – the brick work – is not covered by the subject policy. Stillwell does not dispute that there is a valid, enforceable "your work" exclusion in the subject policy. However, what the policy does cover is damage caused to the overall project from the alleged defects in Stillwell's work.

In Warwick, which the Defendant concedes involved a similar policy definition of the term "occurrence" as the policy in the instant case, the Plaintiff in the underlying litigation brought claims against the insured, Warwick Development, alleging that the Warwick had misrepresented material facts regarding the construction of their residence. Warwick, 446 So. 2d at 1022. First, the Court stated, without explanation, that the damages complained of by the Plaintiffs did not constitute an "occurrence" under the policy provisions. Id. at 1023. Further, the Court held that any allegations regarding misrepresentation by Warwick Development were not an occurrence. Id.

In its opinion in Warwick the Court noted that "[f]or a contrary holding under circumstances amounting to 'an occurrence' see Moss v. Champion Ins. Co., 442 So. 2d 26 (Ala. 1983)." Warwick, 446 So. 2d at 1023. In Moss, the Plaintiff in the underlying cause of action brought suit against the insured, L.J. Moss and his company Central Roofing and Termite Company, for damage to her house allegedly caused by a defective roof installed by Moss. Moss, 442 So. 2d at 26. Moss' insurer, Champion Insurance Company, filed a declaratory judgment action after Moss tendered the underlying lawsuit to them for indemnity and defense. Id. at 27. The trial court held that the plaintiff's

claim in the underlying lawsuit was not an 'accident' under the terms of the policy and Moss appealed. <u>Id</u>.

On appeal the Alabama Supreme Court reversed, holding that under Alabama law the term 'accident' does not exclude human fault called negligence. <u>Moss</u>, 442 So. 2d at 28. (citing <u>United States Fidelity and Guaranty Company of Alabama v. Bonitz Insulation Company of Alabama</u>, 424 So. 2d 569, 571 (Ala. 1982)). Importantly, the Court noted that its decision contrasted with its decision in <u>Warwick</u> because <u>Warwick</u> involved an alleged misrepresentation wherein the instant case involved alleged property damage. <u>Id</u>. at 29. Specifically, the Court held as follows:

> We contrast this finding with our opinion in *United States Fidelity & Guaranty Co. v. Warwick Development Co.*, 446 So.2d 1021 in which we had the same policy definition of an "occurrence." In *United States Fidelity & Guaranty Co.*, we held that a "reliance upon misrepresentations" claimed by the plaintiffs did not constitute an occurrence. We further found under the facts of that case that there was no "property damage" within the definition of the policy provisions.

<u>Moss</u>, 442 So. 2d at 29.

The difference between the holding in <u>Warwick</u> and in <u>Moss</u> is that <u>Warwick</u> involved a misrepresentation, which is admittedly not an occurrence, whereas in <u>Moss</u> the insured's product – a roof – caused property damage to the plaintiff's residence, which was covered under the "occurrence" policy.

Similarly, in <u>Berry</u>, the Plaintiff correctly notes that the Court held that the damages complained of in the underlying cause of action did not constitute an "occurrence" within the meaning of the applicable policy. <u>Berry</u>, 495 So. 2d 511, 513. However, the Plaintiff misconstrues the basis for this holding. In <u>Berry</u>, the Plaintiffs in the underlying case contracted with Gilbreath & Couch Construction Company to construct an addition to their home. <u>Id</u>. at 511. After licensing difficulties arose

regarding the project and it was not completed, the Plaintiffs filed suit against the construction company. Id. at 512. Gilbreath & Couch tendered the case to their insurer, South Carolina Insurance Company, which in turn filed a suit seeking a declaratory judgment that there was no coverage for the allegations in the underlying lawsuit. Id. The trial court held that there was no coverage and Gilbreath & Couch appealed. Id.

On appeal the Alabama Supreme Court affirmed the trial court because it found that although the work itself may have been defective, which was excluded from coverage under the "your product" exclusion in the policy, there was no damage from the work that would have been covered by the policy. Berry, 495 So. 2d at 512. The Court set out the deposition testimony of the Plaintiffs in the underlying case and showed how they testified that there were no complaints of damage to the residence other than the allegedly defective nature of the work itself. Id. at 512-513. Based on this testimony the Court held as follows:

> There is nothing in the deposition of Mary Berry or William Berry that alleges any damage to the existing structure as a result of "an accident, including continuous or repeated exposure to conditions...." Rather, all of the "damages" are related to the work done pursuant to the contract. The insurance policy specifically addresses this type of damage in its "work product exclusion," which states:
>
> > This insurance policy does not apply to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

Berry, 495 So. 2d at 513.

The Plaintiffs in Berry unsuccessfully argued that their case was analogous to the Alabama Supreme Court's decision in United States Fidelity & Guaranty Company v. Bonitz Insulation Company of Alabama, 424 So. 2d 569 (Ala. 1982). In Bonitz the facts in the underlying case showed that the insured, Bonitz Insulation Company, had

constructed a roof on a gymnasium as part of a school project for the City of Midfield. Bonitz, 424 so. 2d at 570. Soon after the roof was completed it began to leak, and despite attempts at remedial efforts, the roof was ultimately replaced. Id. at 571. Suit was filed by the City of Midfield against Bonitz, which then tendered the claim to its insurers, U.S.F. & G and Employer's Mutual Liability Insurance Company of Wisconsin, which had taken over the policy from U.S.F. & G. Id. When U.S.F. & G. and Employer's denied coverage Bonitz filed a declaratory judgment action. Id.

The trial court held, without explaining the basis for its decision, that the insurers were obligated to defend and indemnify Bonitz and the insurers appealed that decision. Bonitz, 424 So. 2d at 571. First, the Supreme Court noted that it disagreed with U.S.F. & G's contention that if Bonitz was negligent in the construction of the roof then there could be no 'accident' or 'occurrence' under the terms of the policy. Id. As stated previously, the Court held that under Alabama law the term 'accident' does not necessarily exclude human fault called negligence. Id. (citing Employer's Insurance Co. of Alabama v. Alabama Roofing & Siding Co., Inc., 271 Ala. 394, 124 So. 2d 261 (1960)). Then, after reviewing the applicable provisions of the insurance policy, which are substantively similar to provisions of the applicable policies in the instant case, the Supreme Court held that the damage to the gymnasium caused by the allegedly defective roof was covered. Id. at 573. Specifically, the Court held as follows:

> If damage to the roof itself were the only damage claimed by the City of Midfield, the exclusions would work to deny Bonitz any coverage under the USF&G policy. The City of Midfield, however, also claims damage to ceilings, walls, carpets, and the gym floor. ***We think there can be no doubt that, if the occurrence or accident causes damage to some other property than the insured's product, the insured's liability for such damage becomes the liability of the insurer under the policy.*** *See Employers Casualty Co. v. Brown-McKee, Inc.*, 430 S.W.2d 21 (Tex.Civ.App.1968); *Aetna Casualty & Surety Co. v. Harvey W. Hottel*, Inc., 289 F.2d 457 (D.C.Cir.1961).

9

Bonitz, 424 So. 2d at 573 (emphasis added) (citing Employer's Casualty Co. v. Brown-McKee, Inc., 420 S.W.2d 21 (Tex. Civ. App. 1968); Aetna Casualty & Surety Co. v. Harvey W. Hottel, Inc., 289 F.2d 457 (D.C. Cir. 1961)).

It is undisputed in the instant case that the Plaintiff in the underlying cause of action is claiming damages for items other than the allegedly defective brick veneer constructed by Stillwell. The Defendant has already conceded that any damages claimed by the Plaintiff in the underlying cause of action related to the brick veneer itself are excluded from coverage under the applicable policy provisions. However, the damage to the building – namely the water intrusion and resulting fungi and mold – caused by the allegedly defective brick veneer is clearly covered under the applicable policies.

The distinction between the decision in Berry and the decision in Bonitz was discussed by the Alabama Court of Civil Appeals in Garrett v. Auto-Owners Insurance Co., 689 So. 2d 179 (Ala. Civ. App. 1997). The Court noted that in Bonitz the Plaintiff in the underlying cause of action alleged damages caused by the insured's allegedly defective work product, which was covered, whereas in Berry the Plaintiff simply alleged a defective work product itself, which was not covered due to the work product exclusions. In the instant case, it is undisputed that the Plaintiff in the underlying cause of action alleges that Stillwell negligently constructed the brick veneer on the subject building, which is not covered, and that the allegedly defective brick veneer has caused damage to the building, which is covered.

The Plaintiff also argues that even if this Court were to hold that there was an "occurrence", thus triggering coverage under the applicable policies, coverage is still excluded because the claims of the plaintiff in the underlying litigation is for purely economic damages or monetary loss. (See Plaintiff's brief, p. 13). This is incorrect and

the case cited in support of this proposition, <u>American States Insurance Co. v. Martin</u>, 662 So. 2d 245 (Ala. 1995), is inapplicable to the facts and policies at issue in the instant case. In Martin, the plaintiff brought suit for monies lost from an investment and brought suit to recover those monies. <u>Martin</u>, 662 So. 2d at 246-247. The Court held that the policy did not cover these losses because they were purely economic or monetary losses. <u>Id</u>. That is not the issue in the instant case. While it may be true that the plaintiff in the underlying litigation is claiming that it lost the use of the building while it was repaired, which would not be covered by these policies, it is equally clear that the actual damage caused to the building itself by this Defendant's allegedly defective brick veneer would be covered.

Therefore, for the foregoing reasons this Defendant, Stillwell Masonry Company, respectfully requests this Court to deny the Plaintiff's Motion for Summary Judgment on this basis.

II.    **The alleged damages in the underlying lawsuit are not excluded under the "property damage" exclusions of the policy.**

The Plaintiff asserts in its Motion for Summary Judgment that "[t]he underlying lawsuit makes clear the alleged damage is to the building's walls, the only area in which Stillwell worked". (Plaintiff's brief, p. 15). This statement is at best a gross oversimplification of the nature of the project and Stillwell's work on the project. As the Defendant's name implies, Stillwell Masonry was responsible for constructing the brick veneer of the building. Stillwell <u>was</u> <u>not</u> responsible for constructing, erecting, building or otherwise involved in the construction of the gypsum board or interior walls of the building, which according to the Plaintiff's Complaint have been damaged due to moisture intrusion through the brick veneer constructed by Stillwell. (See McCabe report

and Graham report, Exhibits 1 & 2 to Defendant's Evidentiary Submissions, respectively).

The Plaintiff also argues that several different exclusions regarding damage to Stillwell's work exclude coverage in this case. The Defendant has already conceded that the policy excludes any damage claimed by the Plaintiff in the underlying suit regarding the brick veneer itself. However, as argued previously, it is also equally clear under the law that the damage caused by the allegedly defectively constructed brick veneer – namely, the water intrusion and resulting fungi and mold – are covered under the policy.

Lastly, in this argument the Plaintiff asserts that coverage is not afforded to the Defendant in this case because of the exclusion applicable to impaired property. (See Plaintiff's brief, p. 18). The Plaintiff's reliance on this exclusion is misplaced because the exclusion only applies if the property has not been "physically injured". In the instant case, the allegedly defective brick veneer has caused damage to the underlying building, including mold growth and water intrusion that, according to the Plaintiff's Complaint in the underlying cause of action, has caused damage to the gypsum wallboard on the interior and the vinyl wallpaper finish on the wallboard. Clearly, this is physical damage to the underlying building caused by Stillwell's allegedly defective brick veneer and therefore not excluded under this provision.

Additionally, the "impaired property" exclusion does not apply if the damage to other property was caused by "sudden and accidental physical injury" to "your product" or "your work". Courts have held that the terms sudden and accidental have held that these terms are ambiguous and should therefore be interpreted as broadly as possible to mean "unexpected and unintended". <u>Alabama Plating Co. v. United States Fid. & Guar.</u>

Co., 690 So. 2d 331 (Ala. 1996).  Clearly, if the brick veneer is in fact defective it was unintended and unexpected.

Accordingly, the Defendant, Stillwell Masonry Company, respectfully requests this Court to deny the Plaintiff's Motion for Summary Judgment on this issue.

### III.    Any fungi or bacterial damages claimed in the underlying suit are covered because the damage, if any, occurred prior to the Plaintiff's exclusion of such damages.

In its brief the Plaintiff correctly notes that under Alabama law insurance coverage is triggered when the damages occur, and not when the events causing the damage took place.  See American States Ins. Co. v. Martin, 652 So. 2d 250 (Ala. 1994); Warwick, 446 So. 2d at 1024 ("as a general rule the time of an 'occurrence' of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time the complaining party was actually damaged".).

In its brief the Plaintiff alleges that the date of when the damage occurred is unclear from the Complaint in the underlying case.  The Plaintiff states that "the first evidence of mold growth appears in an indoor environmental quality survey prepared by Working Buildings, LLC on November 18, 2004".  (Plaintiff's Brief in Support of Motion for Summary Judgment, p. 11).  The more appropriate analysis is to state that the building sustained mold growth since it was defectively constructed and evidence of mold growth was first diagnosed in that report.  It is incorrect to state that was the first evidence of mold growth.  A complete reading of the Plaintiff's Complaint in the underlying litigation reveals that the damage to the building has been continuous and surfaced within "several months" after the completion of the project in Georgia.  It is undisputed that substantial completion of the project occurred on August 12, 2001.  (See

¶ 39, Exhibit 2, Plaintiff's Evidentiary Submissions).    Further, it is undisputed that according to the Plaintiff's Complaint in the underlying cause of action "several months after the completion of major construction evidence of latent defects in the Project work and design became apparent. . . [and] it was evident water intrusion and other serious defects were damaging the Project along with other work and other property." (See ¶ 41, Exhibit 2, Plaintiff's Evidentiary Submissions, doc. 30).

Webster's dictionary defines "several" as "more than two but fewer than many". For the benefit of this argument, the Defendant will generously presuppose that the when the Plaintiff used the term "several" in its Complaint in the underlying suit it meant a year.    Even using this assumption, the damage to the Plaintiff's building occurred and manifested itself prior to State Auto's issuance and enforcement of the fungi and bacterial exclusion in 2004.    Thus, State Auto's reliance upon the exclusion as a basis for excluding coverage in the underlying case is unfounded because at the time that damages occurred to the building in the underlying suit the fungi and bacterial exclusion had not been included as a policy provision.    This is discerned from a simple reading of the Plaintiff's Complaint in the underlying litigation on which the Plaintiff in the instant case bases its entire Complaint for Declaratory Judgment and Motion for Summary Judgment. Thus, any further reading of the Plaintiff's argument regarding this exclusion is moot because the exclusion was not in force at the time that the damage occurred. Accordingly, the Defendant respectfully requests this Court to deny the Plaintiff's Motion for Summary Judgment.

## CONCLUSION

The failure of the Plaintiff's argument in the instant case is embodied in its myopic focus on the alleged damage to the brick veneer constructed by Stillwell Masonry and its oversimplification of the term "walls" in the Plaintiff's underlying Complaint.  It is undisputed that in the Plaintiff's Complaint in the underlying litigation it is alleged that the <u>brick</u> <u>veneer</u> constructed by Stillwell Masonry was defective and allowed water intrusion that affected the gypsum sheathing on the exterior of the steel studs, the batts insulation between the studs, the gypsum wallboard on the interior, and the vinyl wallpaper finish on the wallboard.  Based on the holdings in <u>Moss</u> and <u>Bonitz</u> it is clear that the Plaintiff does not owe coverage to the Defendant for any allegations related specifically to his work – the brick veneer – but the Plaintiff <u>does</u> <u>owe</u> and the policy provides coverage to the Defendant for any damages allegedly caused to the building by the defective brick veneer.  Accordingly, the Defendant respectfully requests this Court to deny the Plaintiff's Motion for Summary Judgment.

Further, the Defendant asserts that the Plaintiff's reliance on the fungi and bacterial exclusion is also misplaced because it is clear from the Plaintiff's Complaint in the underlying litigation that the damage to the building occurred over a year before State Auto incorporated that exclusion into Stillwell's policy.  Therefore, any argument or reliance upon the fungi and bacterial exclusion is improper because the damage occurred prior to the effective date of that endorsement.  Accordingly, the Defendant respectfully requests this Court to deny the Plaintiff's Motion for Summary Judgment on this basis as well.

Lastly, the Defendant requests this Court to refrain from ruling on the Plaintiff's Motion for Summary Judgment to permit the Defendant to conclude discovery in the event that the Court does not find the Defendant's arguments persuasive.

Respectfully Submitted,


/s/ Kevin T. Shires
Kevin T. Shires (ASB-4382-e64k)
Attorney for the Defendant,
Stillwell Masonry Company, Inc.

OF COUNSEL:
Sprain & Shires, P.C.
1707 29th Court South
Homewood, Alabama   35209
(205) 802-7037
Email: kts@sprainlaw.com

## <u>CERTIFICATE OF SERVICE</u>

Please take notice that the foregoing pleading has been served on the following counsel of record in this cause of action by e-filing the same with the United States District Court for the Middle District of Alabama, and by emailing it this the 22nd day of August, 2007.

Christopher Zulanas, Esq.
Jim Moss, Esq.
Friedman, Leak, Dazzio, Zulanas & Bowling, P.C.
3800 Colonnade Parkway
Suite 650
Birmingham, Alabama   35243

/s/ Kevin T. Shires_____
OF COUNSEL
