IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
**EASTERN DIVISION**

| | |
|---|---|
| STATE AUTO PROPERTY & CASUALTY INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | CIVIL ACTION CASE NUMBER: |
| STILLWELL MASONRY COMPANY, INC., ) ) | **3:06-CV-435-DRB** |
| Defendant ) | |

**STATE AUTO PROPERTY & CASUALTY INSURANCE COMPANY'S
REPLY TO DEFENDANT STILLWELL MASONRY COMPANY, INC.'S
BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff in the above-styled action, **State Auto Property & Casualty Insurance Company ("State Auto")**, and in reply to Defendant Stillwell Masonry Company, Inc.'s ("Stillwell") Opposition to State Auto's Motion for Summary Judgment, provides the following reply.

**I. Introduction**

In its opposition brief, Stillwell conceded that any claims for damages related to the brick veneer as claimed by Total System Services, Inc. ("TSS") in the underlying lawsuit are excluded from coverage and that there is no coverage for TSS's claims for loss of use of its building. Consequently, summary judgment is due to be entered in State Auto's favor as to those elements of the underlying lawsuit.

Stillwell does oppose State Auto's Motion for Summary Judgment as to the remaining claims in the underlying lawsuit arguing: (1) damage to the building, other than to the brick veneer, constitutes an "occurrence" under the applicable State Auto policies; (2) the alleged damages in the underlying lawsuit are not excluded under the "property damage" exclusions of the policy, and (3) the fungi or bacteria

exclusion is inapplicable and does not serve to exclude from coverage TSS's claims for damage related to mold in the underlying lawsuit. Each of those arguments is without merit as addressed below and State Auto is entitled to summary judgment on a full and final basis.

## II. Legal Argument

### A. The claims in the underlying lawsuit are not an "occurrence".

In its opposition to State Auto's Motion for Summary Judgment, Stillwell argues the claims in the underlying lawsuit amount to an "occurrence" because there are alleged damages to parts of the walls of TSS's building other than the brick veneer installed by Stillwell. (Stillwell's Brief in Opposition, pp. 2-3 and 5-13). State Auto disputes that contention as set forth fully in State Auto's brief in support of its Motion for Summary Judgment. Additionally, Stillwell fails to show the claims in the underlying lawsuit were an "accident," as is required to meet the definition of an "occurrence" in State Auto's policies. (See Section V - Definitions, ¶13 in State Auto's policies).

On the contrary, Alton Stillwell, owner and representative of Stillwell Masonry, makes clear through his own testimony no "accident" is at issue in the underlying lawsuit. In his deposition, Mr. Stillwell states as follows:

> Q. Let me ask you this Mr. Stillwell; did you and Mr. Denson ever have any conversation about any problems that were occurring at the TSS building?
>
> A. I brought to his attention on several occasions that the exterior walls needed some type of damp; not a damp proofing, but a felt, a Tyvek. I told him that I couldn't believe that they're not putting any kind of moisture barrier on a building like this. And he told me it didn't call for it. To get the job done.

Q. Now tell me when was this that you brought this to his attention?

A. During the duration of the job, you know, while we were, you know, when I first started it and I would mention it again.

Q. So between March 2001 and June 2001?

A. Correct.

Q. And why was it that you brought this up to Mr. Denson?

A. Because I thought it was poor design and you know, it just wasn't what I was used to working around.

Q. Well, what was the concern as far as the design?

A. The building had no felt or no Tyvek, no moisture barrier between the brick and the wall of the building.

Q. What is the consequence of that?

A. Well, brick are porous and this is just my point of view; the building was designed and engineered wrong. It had no cornice. You can get a blowing rain against a brick wall and the brick is going to leak after a period of time, and with no moisture barrier between the brick and the exterior and interior wall of the building you're going to get water in the building. It's just common sense.

(Deposition of Mr. Stillwell, pp. 14-16; Supplemental Evidentiary Exhibit "7").

Q. And let me just follow up. You've testified, that that's something that you were aware of since the time that Stillwell Masonry performed it's work on the project, correct?

A. Well, I was aware of it and I brought it to their attention, but I was instructed to go and finish my job.

(Deposition of Mr. Stillwell, p. 25; Supplemental Evidentiary Exhibit "7").

Since Mr. Stillwell expected, through both experience and "common sense" that water intrusion into TSS's building would happen and water intrusion is in fact the basis of the claims made in the underlying lawsuit, the claims in the underlying lawsuit are not the result of an "accident" and therefore do not amount to an occurrence. In support of its argument otherwise, Stillwell relies heavily on the Alabama Supreme Court's decision in *United States Fidelity & Guaranty Co. v. Bonitz Insul. Co. of Alabama*, 424 So. 2d 569 (Ala. 1982)(Stillwell's Brief in Opposition to State Auto's Motion for Summary Judgment, pp. 8-10). However, when examined closely, *Bonitz Insulation* actually supports State Auto's argument the water intrusion made the basis of TSS's underlying lawsuit was not an "accident" or "occurrence".

In *Bonitz Insulation*, the insured contractor's two general liability insurance carriers were initially ordered by the trial court to defend and indemnify the insured contractor against a lawsuit alleging the insured contractor failed to properly install a roof on a gymnasium. *Bonitz Insulation*, 424 So. 2d 570-71. The roof began to leak shortly after installation, the insured contractor was notified of the problem and the water intrusion through the roof continued for several years. *Id.* Eventually, the roof was completely replaced. *Id.* at 571.

Both insurers appealed and on appeal, the Alabama Supreme Court affirmed with respect to one insurer, but reversed with respect to the other. *Id.* at 571-72. Since there was no evidence the insured contractor expected or intended the roof to leak at the time the first insurer's policies were in force, the Court determined the leak at that time was an "occurrence". *Id.* at 571. With respect to the second insurer, the evidence showed otherwise.

By the time the second insurer's coverage commenced, the possibility of leaks and potential damage had become apparent and in reaching its decision, the court pointed out "the term 'accident' has

4

been variously defined as something unforeseen, unexpected, or unusual." *Id.* at 571-72, citing *Employers Ins. Co. of Alabama v. Rives*, 264 Ala. 310, 887 So. 2d 653 (1955). Since the possibility of roof leaks and resulting damage was apparent at the time of the second insurer's coverage, the court found "the damage that resulted when the possibility of leaks became a reality was not unusual, unexpected, or unforeseen and, therefore, not an accident." *Id.* at 572. As a result, the Court held the second insurer had no duty to defend the insured contractor or indemnify it for any judgment rendered in the underlying lawsuit. *Id.*

Here, at the time State Auto's policies were in force and while Stillwell installed the brick veneer on TSS's building, Mr. Stillwell was not only aware water intrusion into TSS's building was a possibility, he expected it to happen as a matter of "common sense". (Supplemental Evidentiary Exhibit "7", p. 16). Consequently, there can be no doubt the water intrusion that allegedly occurred and caused TSS's damages was not unusual, unexpected, or unforeseen. Consequently, like was found in *Bonitz Insulation*, the damages in the underlying lawsuit allegedly resulting from the water intrusion are not the result of an "accident" and there is no "occurrence" triggering coverage under State Auto's policies.

### B. There is no coverage where Stillwell Masonry knew, or expected, that damage to the TSS building would occur.

Unquestionably, based on Mr. Stillwell's deposition testimony, the damages claimed in the underlying lawsuit do not constitute an "occurrence" under the State Auto policy since Mr. Stillwell knew, or expected, moisture intrusion would happen at the time Stillwell Masonry performed its work from March 2001 to June 2001. Even if the damage was the result of an "accident," the claims in the underlying lawsuit

5

would be excluded from coverage since they were expected by Stillwell. As is made clear under exclusion 2(a) in the State Auto policy:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> **a. Expected Or Intended Injury**
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

In *Calhoun County Economic Development Council v. National Security Fire & Casualty Company*, 808 So. 2d 24 (Ala. 2001), the Alabama Supreme Court recited the rule for determining if damage was expected from the standpoint of the insured:

> Damage would be "'*expected* from the standpoint of the insured' if the insured subjectively possessed *a high degree of certainty* that [damage] to another would result from the [insured's] act." *Id.* at 26.

(Citing *Alabama Farm Bureau Mut. Cas. & Ins. Co. v. Dyer*, 454 So. 2d 921, 925 (Ala. 1984). (emphasis included).

Pertinent facts in *Calhoun County Economic Development Council* include that National Security issued liability insurance policies to the Council containing provisions similar to those is State Auto's policies. National Security denied coverage and the Council filed a bad faith claim alleging National Security owed coverage for an underlying lawsuit involving claims that the Council regraded its land and channeled the flow of water across adjacent property owners causing damage. *Id.* at 25. The trial court entered judgment on a jury verdict for the insurer and the insured appealed. *Id.* at 24.

On the appeal, the Alabama Supreme Court noted evidence showing the Council knew about the grading and runoff problem that existed and did nothing to address the issue after the effective date of the National Security policy. *Id.* at 25. Eventually, the Court affirmed and in so doing, addressed the applicability of the "expected or intended injury" exclusion in National Security's policy, holding the application of the exclusion was determined by "a purely subjective standard." *Id.* at 26, quoting *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Dyer*, 454 So. 2d 921, 925 (Ala. 1984).

Here, it is unquestionable that Stillwell knew and expected that moisture intrusion would occur as a result of its construction of brick veneer walls without a moisture barrier in the TSS building. Mr. Stillwell testified that under these circumstances "...you're going to get water in the building. It's just common sense." (Deposition of Mr. Stillwell p.16; Supplemental Evidentiary Exhibit "7"). Accordingly, it is without question that Stillwell subjectively possessed "a high degree of certainty" that the precise sort of damage in question in the underlying lawsuit, namely damage from water intrusion, would occur. This constitutes an expected or intended injury from the standpoint of the insured, Stillwell, and consequently, the damages asserted in the underlying lawsuit are excluded from coverage.

Another case applicable to the case at bar is *Rockwood Ins. Co., Inc. v. Bay Equip. Co., Inc.* (1988 U.S. Dist. Lexis 19383). In *Rockwood Ins. Co., Inc.*, the insurance carrier sought a declaration of its rights in the United States District Court for the Southern District of Alabama, arguing that it owed no defense and indemnification to Bay Equipment Company, Inc. and other defendants for their operation of a landfill. In part, Rockwood Insurance argued that under the definition of "occurrence" in its policy, which was the same as in the applicable State Auto policies in the present case, the acts complained of in the underlying lawsuit did not constitute an "occurrence or accident sufficient to trigger the coverage

7

provisions of the policies at issue." *Id.* at 4. The United States District Court for the Southern District of Alabama provided the following:

> Essential to the determination of whether an "occurrence" or "accident" within the meaning of the subject policies has transpired is a finding that the potentially insured defendants were unaware of the conduct and activities about which the state court claimants seeks damages.... *Id.* at 4.

Determining that the evidence was sufficient that the defendants were familiar with the operation of the landfill, including the activities and injuries complained of by the state court claimants in the underlying lawsuit, the United States District Court for the Southern District of Alabama concluded that the claims alleged by the underlying plaintiffs in their state court actions were not unforseen, unexpected or unusual and, therefore, did not come within the definitions of "occurrence" or "accident" contained in the applicable policies. *Id.* at 5.

Likewise, Stillwell, as set forth in Mr. Stillwell's deposition testimony, *supra*, was well aware that moisture intrusion would occur to the TSS building as a result of its construction of brick veneer walls absent a moisture barrier. Thus, the evidence in this case is unequivocal that there is no occurrence under the applicable State Auto policies as the damages alleged in the underlying lawsuit against Stillwell were not the result of an "accident," rather, they were expected by Stillwell at the time that it performed its work.

### C.    **The fungi or bacteria exclusion precludes coverage for mold related damage.**

Finally, Stillwell argues that although the first evidence of mold growth is the November 18, 2004, Indoor Environmental Quality Survey prepared by Working Buildings, LLC, the more appropriate analysis is to assume that mold growth was present within "several months" after completion of the TSS building. (Stillwell Opposition Brief, p. 13). Stillwell's assertion is contrary to the only specific evidence of the first

8

identification of mold in the building, namely the November 18, 2004 Indoor Environmental report, and requires speculation and conjecture.

Such speculation or conjecture is insufficient to create substantial evidence in Stillwell's favor and cannot support a decision in its favor. *See e.g., Howard v. Mitchell*, 492 So. 2d 1018, 1020 (Ala. 1986); *Thompson v. Lee*, 439 So. 113, 115 (Ala. 1983); *Alabama Power Co. v. Smith*, 409 So. 2d 760, 763 (Ala. 1982). This is true especially in light of the fact the only actual evidence in this matter, the November 18, 2004 Indoor Environmental report, shows mold appeared only after the "fungi or bacteria" exclusion was included in State Auto's policies. Since mold-related damage did not happen until the "fungi or bacteria" exclusion was in force, any damages related to the mold could not have been deemed to occur before the exclusion was in force. *See e.g., American States Ins. Co. v. Martin*, 652 So. 2d 250 (Ala. 1994); *Utica Mut. Ins. Co. v. Tuscaloosa Motor Co.*, 329 So. 2d 82 (Ala. 1976). Consequently, the exclusion applies to TSS's claims for damages related to mold and per the exclusion:

> b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or "bacteria", by any insured or by any other person or entity.

are not covered under State Auto's policies.

### III. Conclusion

In conclusion, there is no "occurrence" to trigger coverage as the moisture intrusion damage was not an accident, but instead, was expected from the standpoint of the insured, Stillwell. Further, where the moisture intrusion damage was expected by Stillwell, in that Mr. Stillwell admittedly possessed a "high degree of certainty" that moisture intrusion damage would occur, the claims in the underlying lawsuit are

excluded under exclusion 2(a) of the State Auto policy. Finally, any claims for mold damage are excluded pursuant to the mold or fungi exclusion as no viable evidence exists showing mold appeared prior to 2004, when a report was prepared identifying the existence of mold in a TSS building. Accordingly, for the reasons stated herein, as well as the arguments advanced in State Auto's Brief in Support of its Motion for Summary Judgment, State Auto respectfully requests this Honorable Court enter an Order granting its Motion for Summary Judgment finding as a matter of law that no coverage exists for the claims asserted against Stillwell in the underlying lawsuit.

Respectfully submitted,

_____
Christopher J. Zulanas
James W. Moss
Attorneys for State Auto Property &
Casualty Insurance Company

**Of Counsel:**
FRIEDMAN LEAK
3800 Colonnade Parkway, Suite 650
Birmingham, AL 35243
(205) 278-7000
(205) 278-7001 Fax

### CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing pleading to be electronically filed via CM/ECF system for service on counsel listed below this 29th day of August, 2007.

Robert H. Sprain, Jr., Esq.          rhs@sprainlaw.com
Kevin Tannehill Shires, Esq.         ktshires@bellsouth.net, ktshires@hotmail.com
SPRAIN & SHIRES, PC
1707 South 29th Court
Homewood, AL 35209

_____
Of Counsel

10